John R. ARNOLD et al., Plaintiffs
v.
LOUISVILLE AND NASHVILLE RAILROAD COMPANY, Defendant

James C. BATTS et al., Plaintiffs
v.
LOUISVILLE AND NASHVILLE RAILROAD COMPANY, Defendant

Leonard H. MONTGOMERY et al., Plaintiffs
v.
LOUISVILLE AND NASHVILLE RAILROAD COMPANY, Defendant

Civ. A. Nos. 2650, 2651, 2652.

United States District Court
M. D. Tennessee,
Nashville Division.

Jan. 19, 1960.

Walter Harwood and Judson Harwood, of Harwood, Breedlove & Mittwede, Nashville, Tenn., for plaintiffs.

David Keeble, of Hooker, Keeble, Dodson & Harris, Nashville, Tenn., H. G. Breetz, Louisville, Ky., for defendant.

WILLIAM E. MILLER, District Judge.

These actions have been submitted upon plaintiffs' amended complaints and defendants' motions to dismiss. The motions present identical legal questions.

The facts, as disclosed by the amended complaints, the motions to dismiss, and the affidavits filed in support of the motions, are as follows:

Prior to August 14, 1957, plaintiffs were employed by the Nashville, Chattanooga & St. Louis Railway and by the Louisville and Nashville Railroad Company. On March 1, 1957, the Interstate Commerce Commission, in Finance Docket No. 18845, Louisville & Nashville Railroad Company et al., Merger, etc., approved the acquisition of the properties and franchises of the Nashville, Chattanooga & St. Louis Railway by the Louisville and Nashville Railroad Company through a merger of the two railroads into the Louisville and Nashville Railroad Company, the defendant in each of the cases. The actual merger was effected on August 14, 1957, at which time all of the plaintiffs became employees of the defendant. They allege that they were subsequently discharged as a result of the merger of the two railroads and that under the conditions imposed by the Commission for the protection of employees who would be adversely affected by the merger the defendant is required to pay them the amounts they are seeking to recover. They ground their claim to Federal jurisdiction upon four sections of the United States Code, namely,

U.S.C. §§ 1336 and 1337, and 49 U.S.C.A. §§ 8, 9.[1]

The grounds for the motion to dismiss are, in substance, that the court lacks jurisdiction of the subject matter because (1) jurisdiction is not conferred by any of the provisions of the Code under which the actions were brought, (2) the amended complaints do not show an exhaustion of administrative remedies provided for by the orders of the Commission, (3) the amended complaints do not show an exhaustion of administrative remedies provided for by the orders of the Commission as implemented by a collective bargaining agreement executed by defendant and the duly authorized representatives of plaintiffs, or by the Railway Labor Act (45 U.S.C.A. § 151 et seq.), and (4) " * * * the only remedies available to plaintiffs are the administrative remedies of arbitration" as provided for by the order of the Commis-

sion as implemented by the collective bargaining agreement, or having the Commission resolve the dispute.

The merger was effected with the approval of the Commission under the provisions of 49 U.S.C.A. § 5(2). Subparagraph (f) of that section provides that the Commission shall, as a condition of its approval of a merger, require a fair and equitable arrangement to protect the interests of the employees affected.[2]

Complying with this statutory mandate, the Commission approved the merger subject to the conditions and arrangements for the protection of employees as set out in its report of March 1, 1957 (295 I.C.C. 501). These conditions and arrangements were the same as those imposed in New Orleans Passenger Terminal Case, 282 I.C.C. 271, wherein the Commission found that a fair and equi-

1. 28 U.S.C. § 1336:
"Except as otherwise provided by Act of Congress, the district courts shall have jurisdiction of any civil action to enforce, enjoin, set aside, annul or suspend, in whole or in part, any order of the Interstate Commerce Commission."
28 U.S.C. § 1337:
"The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies."
49 U.S.C.A. § 8:
"In case any common carrier subject to the provisions of this chapter shall do * * * any act * * * in this chapter prohibited or declared to be unlawful, or shall omit to do any act * * * in this chapter required to be done, such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this chapter, together with a reasonable counsel or attorney's fee, * * * "
49 U.S.C.A. § 9:
"Any person or persons claiming to be damaged by any common carrier subject to the provisions of this chapter may either make complaint to the Commission as hereinafter provided for, or may bring suit in his or their own behalf for the recovery of the damages for which such

common carrier may be liable under the provisions of this chapter in any district court of the United States of competent jurisdiction; * * * "

2. 49 U.S.C.A. § 5(2) (f):
"As a condition of its approval, under this paragraph, * * * the Commission shall require a fair and equitable arrangement to protect the interests of the railroad employees affected. In its order of approval the Commission shall include terms and conditions providing that during the period of four years from the effective date of such order such transaction will not result in employees of the carrier or carriers by railroad affected by such order being in a worse position with respect to their employment, except that the protection afforded to any employee pursuant to this sentence shall not be required to continue for a longer period, following the effective date of such order, than the period during which such employee was in the employ of such carrier or carriers prior to the effective date of such order. Notwithstanding any other provisions of this chapter and chapters 8 and 12 of this title, an agreement pertaining to the protection of the interests of said employees may hereafter be entered into by any carrier or carriers by railroad and the duly authorized representative or representatives of its or their employees."

table arrangement for the protection of affected employees would be provided by applying the terms of "The Washington Agreement of May 21, 1936." The Washington Agreement referred to contains the following provisions pertinent here:

"Section 7(a). Any employee of any of the carriers participating in a particular coordination who is deprived of employment as a result of said coordination shall be accorded an allowance (hereinafter termed a coordination allowance), based on length of service which * * * shall be a monthly allowance equivalent * * *

* * * * * *

"Section 9. Any employee eligible to receive a coordination allowance under section 7 hereof may, at his option at the time of coordination, resign and (in lieu of all other benefits and protections provided in this agreement) accept in a lump sum a separation allowance determined in accordance with the following schedule:

| "Length of Service | Separation Allowance |
|---|---|
| 1 year & less than 2 years | 3 months' pay |
| 2 years " " 3 " | 6 " " |
| 3 " " " 5 " | 9 " " |
| 5 " " " 10 " | 12 " " |
| 10 " " " 15 " | 12 " " |
| 15 years and over | 12 " " |

"In the case of employees with less than one year's service, five days' pay * * * for each month in which they performed service will be paid in a lump sum."

In its report of March 1, 1957, the Commission further provided that disputes as to particular employees or groups of employees affected by actions of the railroads in consummating the merger may be resolved by following the procedures set forth in Condition No. 8 of the conditions prescribed in Oklahoma Ry. Trustee Abandonment, 257 I.C.C. 177, such condition being in these terms:

"In the event that any dispute or controversy arises with respect to the protection afforded by the foregoing conditions * * * which cannot be settled by the carriers and the employee, or his authorized representatives, within 30 days after the controversy arises, it may be referred, by either party, to an arbitration committee for consideration and determination, the formation of which committee, its duties,

procedure, expenses, etc., shall be agreed upon by the carriers and the employee, or his duly authorized representatives."

On January 10, 1958, defendant and the duly authorized representatives of its employees executed a Memorandum of Agreement effective January 16, 1958, the material provisions of which are as follows:

"The Nashville, Chattanooga and St. Louis Railway has been merged into the Louisville and Nashville Railroad Company by authority of an order of the Interstate Commerce Commission in Finance Docket No. 18845 which became effective August 14, 1957.

"The Interstate Commerce Commission prescribed conditions for the protection of employes [employees] who may be adversely affected by the transaction. Therefore, it is understood that the protective provisions of the New Orleans Union Passenger Terminal consolidation, 282 I.C.C. 271, will

govern in this instance except as changed or supplemented herein.

\* \* \* \* \* \*

"Lump Sum Settlement

"Any employe [employee] eligible to receive a dismissal allowance may at his option at the time he is adversely affected, \* \* \* resign and (in lieu of all other benefits and protection herein provided for) accept a lump sum separation allowance determined in accordance with Section 9 of the Washington Agreement.

\* \* \* \* \* \*

"Handling of Disputes

"(a) Claims arising under the provisions of this agreement or the protective conditions imposed by the Interstate Commerce Commission may be handled by the employes [employees] or their representatives directly with the Chief Personnel Officer. \* \* \*

"In the event that any dispute arises with respect to protection \* \* \* which cannot be settled ] · the carrier and the authorized representatives of the employe [employee] or employes [employees] involved within thirty days after the controversy arises, it may be referred, by either party, to an arbitration board selected as follows: \* \* \* Decision of the dispute shall be by majority of the arbitration board and shall be final and binding on both parties."

All of the plaintiffs were discharged after the execution of the Memorandum of Agreement effective January 16, 1958.

Upon termination of their employment, plaintiffs severally filed claims with defendant asserting their rights to the protective benefits, and notifying defendant that they were electing "to accept a lump sum settlement as provided in said Memorandum of Agreement in lieu of all other benefits and protection afforded therein \* \* \*."

 In their original complaints, plaintiffs asserted their rights under the orders of the Commission as implemented by the Memorandum of Agreement effective January 16, 1958. With the Court's permission, they later filed amended complaints in which all references to the Memorandum of Agreement effective January 16, 1958, have been eliminated, and they now rest their claims solely upon the order of the Commission approving the merger and the conditions imposed therein for their protection. The first question thus presented is whether plaintiffs' rights, and their causes of action, now derive from the order of the Commission or from the Memorandum of Agreement effective January 16, 1958.

Plaintiffs' argument, as the Court understands it, is that their rights are not affected by the Memorandum of Agreement, as their collective bargaining representatives were without authority to "bargain away" rights which they derived under the order of the Commission. This argument, however, ignores the specific provision of the statute wherein it is stated:

"Notwithstanding any other provisions of this chapter \* \* \*, an agreement pertaining to the protection of the interest of said employees may hereafter be entered into by any carrier or carriers by railroad and the duly authorized representative or representatives of its or their employees."

Thus, while the statute requires the Commission to make provisions for the protection of employees adversely affected, it specifically reserves to the railroad employees the right, through their duly authorized representatives, to enter into an agreement with the railroad as to terms, conditions and arrangements for their own protection. Under this provision of the statute, as the Court construes its meaning and effect, the employees may, through a collective bargaining agreement with the railroad, make provisions for their own protection by adopting, supplementing or im-

plementing the provisions made by the Commission for their protection. It would appear logically to follow that such an agreement takes the place of the order of the Commission insofar as the agreement and the order relate to the same subject matter. The Court, therefore, holds that any rights of plaintiffs to receive the lump sum payments they are seeking to recover derive from the Memorandum of Agreement effective January 16, 1958, and that such agreement is the foundation of their rights in this respect.

Since plaintiffs' rights are founded upon a contract, they cannot be maintained, under 28 U.S.C. § 1336, as actions to enforce an order of the Interstate. Commerce Commission.

■ Neither can they be maintained under 49 U.S.C.A. §§ 8, 9, as actions for damages resulting from a violation of the act. The Court cannot follow plaintiffs' reasoning that since the amended complaints allege that defendant has failed to comply with the order of the Commission, " * * * it is clear that plaintiffs' damages and their rights of action are directly traceable to the act regulating interstate commerce and to the order of the Commission issued by virtue of that act. Hence, the Court has jurisdiction of these civil actions under Sections 8 and 9." Section 8 declares that any carrier violating any provision of the Interstate Commerce Act is liable for damages caused thereby to the person injured. Section 9 vests the district courts of the United States with jurisdiction of actions for the recovery of such damages. To sustain a recovery under these sections, it must appear that damages arise from the violation of some provision of the act itself. Since the amended complaints do not allege any specific violation of the act, Sections 8 and 9 have no application to these cases. Williams v. Jacksonville Terminal Co., 315 U.S. 386, 408, 62 S.Ct. 659, 86 L.Ed. 914; Atlantic Coast Line R. Co. v. Riverside Mills, 219 U.S. 186, 208, 31 S.Ct. 164, 55 L.Ed. 167; Van Patten v. Chicago, M. & St. P. Ry. Co., C.C., 81 F. 545, 546.

■ Plaintiffs also assert a right to maintain the actions under 28 U.S.C. § 1337. By that section, the district courts are vested with jurisdiction of civil actions arising under any Act of Congress regulating commerce. Defendant contends, on the other hand, that since the controversies arise from the collective bargaining agreement (the Memorandum of Agreement effective January 16, 1958), the actions are within the exclusive jurisdiction of the National Adjustment Board as provided by the Railway Labor Act (45 U.S.C.A. § 151 et seq.).

Although the Court has reached the conclusion that plaintiffs' rights of action arise under the Memorandum of Agreement, it is not necessary to consider whether the Railway Labor Act is applicable here. It is apparently conceded that if that act is applicable, the Court is without jurisdiction. If it is not applicable, the Court is still without jurisdiction because the plaintiffs have not exhausted the administrative remedies provided for in the Memorandum of Agreement.

In Thompson v. St. Louis-San Francisco Ry. Co., D.C.S.D.Ala., 113 F.Supp. 900, 902, the plaintiff, alleging that he had been deprived of employment as a result of a coordination between two carriers, sought to recover the coordination allowance provided by the Washington Agreement of May 21, 1936. The Court held that since plaintiff had not elected to resign and receive the lump sum separation allowance he retained his status and subsisting rights of an employee, even though he had been temporarily deprived of employment, and that primary jurisdiction of the controversy was vested in the National Adjustment Board by the Railway Labor Act. The Court then further held:

"In the alternative it does not appear that plaintiff has exhausted the administrative remedies provided by Section 13 of the Washington Job Agreement. In Transcontinental

and Western Air, Inc. v. Koppal, 345 U.S. 653, 73 S.Ct. 906, 97 L.Ed. 1325, it was held that, when required by the law of the state in which suit is brought, an employee must exhaust his administrative remedies under his employment contract before resorting to the courts.

"In Bell v. Western Railway of Alabama, 1934, 228 Ala. 328, 153 So. 434, 438, Bell, an employee of the railroad brought an action for breach of contract. The contract upon which the suit was based provided that 'all disputes growing out of grievances, or the interpretation, or application of agreements between the carrier and its employees, should be handled by the board of adjustment, in the manner provided by said Railway Labor Act.' After referring to the cognate provisions of the Railway Labor Act of 1926, 44 Stat. 577, the Supreme Court of Alabama concluded that the parties to such contract were under an obligation to submit their disputes to arbitration by a Board of Adjustment before resorting to the courts.

"The Court has found no case wherein the Alabama Supreme Court has had occasion to re-examine its holding since the 1934 amendment to the Railroad [sic] Labor Act, when Section 153 (i) was amended by substituting the word "may" for 'shall,' but the court is of the opinion that the Alabama Court would hold that where contracting parties agree that either may resort to a designated tribunal for an adjustment of grievances, they must exhaust such remedy before resorting to the courts for redress.

The only Tennessee cases on the subject which have been cited to the Court and counsel will submit its

indicate that under the law of Tennessee an employee must exhaust the administrative remedies provided in his employment contract before he may resort to the courts for redress. Jenkins v. Atlas Powder Co., 31 Labor Cases, 70,348. Cf. Bryan v. International Alliance, Tenn. App., 306 S.W.2d 64; Haynes v. United Chemical Workers, 190 Tenn. 165, 174, 228 S.W.2d 101. The Court is of the opinion that the principles stated in Thompson v. St. Louis-San Francisco Ry. Co., supra, are applicable here, and that the actions cannot be maintained under 28 U.S.C. § 1337, since plaintiffs have failed to show an exhaustion of the administrative remedies provided in the Memorandum of Agreement effective January 16, 1958.

The Court is of the opinion, in the alternative, that even if plaintiffs' rights should be regarded as being derived from the order of the Commission, and not from the Memorandum of Agreement, the court would lack jurisdiction, since plaintiffs have not exhausted the remedies of arbitration prescribed by the Commission itself. While the Commission has provided that disputes "may" be submitted to arbitration, it would appear that the provisions made by the Commission for arbitration are mandatory and not permissive.

Under Section 5(2) (f) of the act, the Commission is endowed with broad discretionary authority to determine what arrangements for the protection of employees are fair and equitable. Acting under that discretionary authority, the Commission imposed conditions for the protection of affected employees, but it did not undertake to determine or fix the rights of individual employees or groups of employees.[3] Recognizing the fact that the protective provisions would have to be applied in hundreds of individual cases

3. In its order of March 1, 1957, approving the merger, the Commission held: '* * * That * * * since the conditions previously prescribed * * * for the protection of the employees adversely affected * * * are applicable * * *, and since such conditions designate appropriate procedures for determining whether, when, and to what extent particular employees may be adversely affected * * *; question(s) arising therefrom are reserved for further consideration or determination by the Commission.'"

as they arose and that many disputes would develop, the Commission prescribed arbitration as a fair and equitable method of resolving disputes between the employees and the carrier, and it specifically reserved to the parties the right to determine by agreement the composition and duties of the arbitration board. It may be presumed that the Commission considered the importance of providing an arrangement for the enforcement of the rights of individual employees with dispatch, and without the delay incident to formal court procedure. The contemplated arbitration board was duly established by the parties by the Memorandum of Agreement effective January 16, 1958, as above noted.

The history of Interstate Commerce Commission orders is convincing evidence that compulsory arbitration was intended in this case. In scores of cases involving merges and consolidations, the Commission has followed the practice of prescribing arbitration as a method of settling disputes between affected employees and carriers and, so far as the Court can determine, the Commission's authority to do so has never been questioned. This long-continued administrative practice is indicative of congressional approval. It is also highly significant that counsel have been unable to cite any reported case wherein an individual employee has sought judicial enforcement of protective provisions imposed by the Commission under Section 5(2)(f).

The Commission has provided that disputes may be referred, by either party, to an arbitration committee. The Supreme Court of the United States, in Brotherhood of Railway Trainmen v. Chicago & Indiana R. R., 353 U.S. 77, 77 S.Ct. 635, 637, 1 L.Ed.2d 622, construed similar language in the Railway Labor Act. The Court said:

"This language is unequivocal. Congress has set up a tribunal to handle minor disputes which have not been resolved by the parties themselves. Awards of this Board are 'final and binding upon both parties.' And either side may submit the dispute to the Board. The Brotherhood suggests that we read the Act to mean only that an Adjustment Board has been organized and that the parties are free to make use of its procedures if they wish to; but that there is no compulsion on either side to allow the Board to settle a dispute if an alternative remedy, such as resort to economic duress, seems more desirable. Such an interpretation would render meaningless those provisions in the Act which allow *one* side to submit a dispute to the Board, whose decision shall be final and binding on *both* sides."

To the same effect was the holding in Thompson v. St. Louis-San Francisco Ry. Co., supra.

The Memorandum of Agreement effective January 16, 1958, which was executed by the parties in compliance with the Commission's order, adopted the provisions made by the Commission, and further provided, in language similar to that construed in the cases just cited, that arbitration could be invoked by either party and that decisions of the arbitration board would be final and binding on both parties. Considering the terms of the Commission's order and the agreement of the parties, the history of orders of this type, the evident purpose to provide an expeditious means of determining individual disputes and judicial construction of similar language, the Court cannot doubt that mandatory arbitration was intended by the Commission as well as by the parties themselves.

The only Tennessee cases on the point have been cited by the Court. The motions to dismiss are sustained, and counsel will submit an appropriate order for the Court's approval.

---

3. In its order of March 1, 1951, approving the merger, the Commission held: "* * * conditions previously prescribed for the protection of the employees adversely affected * * * are applicable * * *, and since such conditions designate ap-

4. 45 U.S.C.A. §152, First; 45 U.S.C.A. §152; question (i) * * * Disputes * * * may be referred to arbitration as * * * either party * * * by the parties as designated by the Commission."