James C. BATTS et al., Plaintiffs-Appellants,

v.

LOUISVILLE AND NASHVILLE RAILROAD COMPANY, Defendant-Appellee.

LOUISVILLE AND NASHVILLE RAILROAD COMPANY, Plaintiff-Appellee,

v.

Austin P. CANTRELL et al., Defendants-Appellants.

Nos. 14285, 15010.

United States Court of Appeals
Sixth Circuit.

April 17, 1963.

Walter Harwood, Nashville, Tenn., Judson Harwood, Nashville, Tenn., on brief, for appellants.

M. D. Jones, Louisville, Ky., David M. Keeble, Nashville, Tenn., H. G. Breetz, Louisville, Ky., on brief, for appellee.

Before CECIL, Chief Judge, MILLER, Circuit Judge, and McALLISTER, Senior Circuit Judge.

McALLISTER, Senior Circuit Judge.

The above appeals have been consolidated, and consolidated briefs have been filed.

In the case of James C. Batts et al., supra, an action was brought by employees of the Louisville and Nashville Railroad Company, hereinafter referred to as L&N, who claimed to have been adversely affected by a merger of the above-named railroad company with the Nashville, Chattanooga and St. Louis Railway, hereinafter called N. C. & St. L. The District Court, in the Batts case, held that it did not have jurisdiction of the action and that such employees must submit their claims to arbitration. The court, in dismissing the employees' action, stated that it adjudicated solely the question of its lack of jurisdiction and did not determine the particular arbitration remedy or procedure which the appellants were required to follow. This case, also known as the Arnold case, because of one of the plaintiffs appellants, is reported sub nomine Arnold v. Louisville and Nashville Railroad Company, D.C., 180 F.Supp. 429.

Almost immediately after the decision in the foregoing case, the L&N filed the complaint in the Cantrell case in which it sought a declaratory judgment in order to resolve a dispute as to the proper method of arbitration. In that suit, L&N alleged that the District Court had jurisdiction to determine the proper method of arbitration of the dispute in question, and that such arbitration was governed by an agreement between the L&N and the Union, which was the bargaining agent of the employees. The court thereafter dismissed a certain counterclaim of the employees, denied their motion for summary judgment, granted the motion of L&N for summary judgment, and decreed that any dispute as to the employees' protective benefits must be arbitrated in accordance with the provisions of the arbitration procedure, provided by the agreement between the L&N and the Union, which was the bargaining agent of the employees. Lou-

isville and Nashville Railroad Company v. Cantrell, D.C., 215 F.Supp. 229.

This controversy had its origin in an application filed with the Interstate Commerce Commission by L&N for authority to merge its properties and franchises with N. C. & St. L. After extensive hearings before the Commission, and subject to certain conditions hereinafter mentioned, the Interstate Commerce Commission approved the merger by its report and order, entitled Louisville & Nashville Railroad Company, et al. Merger, etc., 295 I.C.C. 457. A direct attack on the Commission's report and order was unsuccessful when a three-judge District Court refused to annul, vacate, or set it aside. City of Nashville, Tennessee v. United States, D.C., 155 F.Supp. 98, aff. 355 U.S. 63, 78 S.Ct. 139, 2 L.Ed. 2d 106. Pursuant to the order of the Interstate Commerce Commission, the merger was consummated August 30, 1957.

In approving the merger, the Commission imposed certain general conditions for the protection of employees of the two railroads who might be adversely affected as a direct result of the merger. These employee-protective conditions were imposed by the Commission pursuant to 49 U.S.C. § 5(2) (f).[1]

In its report and order, the Commission imposed, as is its general practice, the same conditions for the protection of the employees as it had imposed for the protection of employees in certain other controversies and agreements, known as the New Orleans Union Passenger Terminal Case, 282 I.C.C. 271, Oklahoma Railway Co. Trustees Abandonment, 257 I.C.C. 177, and the Washington Job Protection Agreement of May 1936, an industry-wide collective bargaining agreement, which contained a schedule of financial benefits for employees adversely affected as a result of consolidations and coordinations. The Commission, however, imposed certain limitations and restrictions on the application of the Washington Job Protection Agreement. It further provided for the resolution of disputes involving entitlement of employees to the protective conditions by providing, as part of the conditions, "the procedure set forth in condition No. 8 of the conditions prescribed in Oklahoma Railway Co. Trustees Abandonment. * * * That condition provides for consideration and determination by an arbitration committee of questions regarding the eligibility for protection of persons or groups elsewhere described in the conditions. * * *" In condition No. 8 of the Oklahoma conditions, the Commission made provision for the formation of the arbitration committee, its duties, procedure, expenses, etc., by requiring the execution of implementing agreements hereinafter discussed.

On January 10, 1958, the unions, operating through System Federation Nos. 83 and 91, Railway Employes' Department, A. F. L.-C. I. O., entered into an implementing agreement with L&N. This implementing agreement was effec-

---

1. 49 U.S.C. § 5(2) (f) provides (Section 5(2) (f) of the Interstate Commerce Act):

"(f) As a condition of its approval, under this paragraph, of any transaction involving a carrier or carriers by railroad subject to the provisions of this chapter, the Commission shall require a fair and equitable arrangement to protect the interests of the railroad employees affected. In its order of approval the Commission shall include terms and conditions providing that during the period of four years from the effective date of such order such transaction will not result in employees of the carrier or carriers by railroad affected by such order being in a worse position with respect to their employment, except that the protection afforded to any employee pursuant to this sentence shall not be required to continue for a longer period, following the effective date of such order, than the period during which such employee was in the employ of such carrier or carriers prior to the effective date of such order. Notwithstanding any other provisions of this chapter and chapters 8 and 12 of this title, an agreement pertaining to the protection of the interests of said employees may hereafter be entered into by any carrier or carriers by railroad and the duly authorized representative or representatives of its or their employees."

tive January 16, 1958, and provided additional benefits to employees adversely affected as the result of the merger. In the implementing agreement, provision was made, and machinery was set up, for the arbitration of disputes relative to the entitlement of employees to the protective benefits provided by the Interstate Commerce Commission, and the additional benefits provided for by the implementing agreement. The above-named unions entering into the implementing agreement with L&N, had represented, long before the merger, all of the appellants in these cases, who were employees of the L&N, as well as the N. C. & St. L. employees. These unions had been certified, under the Railway Labor Act, as the duly authorized bargaining representatives of all of such employees.

The determining question in these cases is whether the employees are relegated to arbitration and representation by their duly certified bargaining agent, or whether they are entitled, as they contend, to make their claims against the merged Railroad and to bring suit on such claims if they are denied.

The provisions, in brief, of the various agreements incorporated by the Interstate Commerce Commission in its report and order approving the merger in the instant case, provide for certain payments or reduced employment of employees "affected by a particular coordination." Coordination means "joint action by two or more carriers whereby they unify, consolidate, merge or pool in whole or in part their separate railroad facilities or any of their joint operations or services previously performed by them through such separate facilities."

Appellant employees insist upon presenting their own claims to the Railroad, and the right of suing thereupon in case of refusal to pay. The Railroad maintains that disputes and controversies have arisen with respect to the entitlement of the employees in question to benefits; that these claims are subject to arbitration; and that the arbitration machinery includes as arbitrators the Railroad or its representative and the duly authorized representative of the employees. Among the reasons why the Railroad contends that all such claims are subject to arbitration is that the employees in question were not adversely affected by the merger, but rather that instead of their discharges and furloughs being the result of the merger, they were caused by loss of business, general economic decline, and other reasons not related to the merger; and that consequently such employees are not entitled to benefits upon their discharge or furlough. Moreover, the Railroad submits that the controlling statutory provision sets forth that, notwithstanding any other provisions of the Interstate Commerce Act, an agreement pertaining to the interests of the employees affected by the merger may be entered into by any carrier or carriers and the duly authorized representative or representatives of its or their employees.

The District Court held that the implementing agreement between the carrier and the duly authorized representative of the employees, effective January 16, 1958, which was executed by the carrier and the representative of its employees in compliance with the Commission's order, adopted the provisions made by the Commission, and further provided that arbitration could be invoked by either party; that decisions of the arbitration board would be final and binding on both parties; that, while it was the clear intention of the Commission that such disputes should be settled by arbitration, the machinery for arbitration was not, however, prescribed or spelled out by the Commission, but its order simply provided that the formation of the committee and its duties, procedure, expenses, and the like "shall be agreed upon by the carrier and the employee or his duly authorized representatives." The agreement which was entered into between the carrier and the duly authorized representative of its employees actually did provide for the establishment of the arbitration board and its duties, procedures, expenses, and the like; and the

District Court emphasized that the Interstate Commerce Act specifically reserved to the carrier and "the duly authorized representative of its or their employees" the right to enter into an agreement "pertaining to the protection of the interests of said employees." 49 U.S.C.A. § 5(a) (f). The District Court, in conclusion, held that the agreement between the carrier and the representative of its employees provided a method of arbitration; that it clearly pertained "to the protection of the interests" of the employees; and that such agreement was authorized by the Interstate Commerce Commission's order and by the Interstate Commerce Act. Further, the District Court held that the agreement was binding upon the carrier and its employees, and that the arbitration procedure to be followed was that prescribed in the agreement executed between the carrier and the representative of its employees.

In the instant case, the Interstate Commerce Commission provided, by reference to the Oklahoma Railway Trustees Abandonment, 257 I.C.C. 177, that any dispute or controversy arising with respect to the protection accorded to the employees, which could not be settled by the carrier and the employee or his authorized representatives, within thirty days after the controversy arose, "may be referred, by either party, to an arbitration committee for consideration and determination, the formation of which committee, its duties, procedure, expense, et cetera, shall be agreed upon by the carriers and the employee, or his duly authorized representatives."

■ The District Court held that the above expression, to the effect that disputes "may be referred," to arbitration, should be construed as mandatory and not permissive. Appellants contend that the District Court erred in this holding. We do not agree. In New Orleans and Northeastern Railroad Company v. Bozeman, et al., 312 F.2d 264 (C.A.5), the Court, confronted by a similar contention, with regard to the same section of conditions of the Oklahoma Ry. Abandonment, supra, stated:

"We conclude that Section 8 of the Conditions gave either party the absolute right to select arbitration as a means for settling the dispute and when such selection was made then arbitration was mandatory on the other party. We also conclude that the appellees made this election, as found by the trial court, and we find that there is no prohibition in the statute against giving effect to this term of the I. C. C. order.

"Neither party cites us to any case in which a court has directly passed upon a complaint to compel arbitration under paragraph 8 of the 'Oklahoma conditions.' We are thus required to construe the language of the I. C. C. orders as best we may. In doing so, we follow the injunction of the Supreme Court touching on the construction of statutes, which has most recently found expression in the case of Flora v. United States, 357 U.S. 63, 78 S.Ct. 1079, 2 L.Ed.2d 1165. The Court there said at page 65, 78 S.Ct. at page 1081:

" 'In matters of statutory construction the duty of this Court is to give effect to the intent of Congress, and in doing so our first reference is of course to the literal meaning of words employed.'

"Turning now to the meaning of the original language touching on arbitration, we think the language could hardly be plainer that the Commission order intended to give either party affected by the acquisition the absolute right to refer any dispute of the nature here in issue to arbitration. It says, the dispute 'may be referred, by either party, to an arbitration committee for consideration and determination.' It would be meaningless for the order to provide that the appellees may refer the dispute to arbitration if such provision were to be construed

as also meaning that such election could be defeated by the refusal of the appellant to acquiesce. The language plainly means that either party may make an election, binding on the other, to refer the dispute to arbitration. We think this is the teaching of the Supreme Court's opinion in Brotherhood of Railroad Trainmen v. Chicago River and Indiana R. R. Co., 353 U.S. 30, 77 S.Ct. 635, 1 L.Ed.2d 622, which rejected the argument here made by appellant, which in that case was advanced by a railway labor organization. The Supreme Court there said:

> " 'Such an interpretation would render meaningless those provisions in the Act which allow *one* side to submit a dispute to the Board, whose decision shall be final and binding on *both* sides. If the Brotherhood is correct, the Adjustment Board could act only if the union and the carrier were amenable to its doing so. The language of § 3, First, reads otherwise and should be literally applied in the absence of a clear showing of a contrary or qualified intention of Congress.' (Emphasis theirs.) 353 U.S. 30, 34, 35, 77 S.Ct. 635, 637."

Appellant employees contend that it would be unfair to them, and an impairment of their rights to be required to submit their claims for protective benefits to an arbitration committee concerning which they were denied any right of choice in its formation. In the railway labor field, Congress, in the Railway Labor Act, 45 U.S.C.A. § 151 et seq., has specifically provided for arbitration of employees' claims before an arbitration board selected by the carrier and the duly authorized representative of the employees. There appears to us nothing unfair or inequitable about requiring a railway employee to submit his individual claim to an arbitration board, the formation of which is agreed upon by the duly certified bargaining agent of the employees and the carrier. Such is the usual and accepted method of selecting an arbitration board in controversies between railroads and their employees, as seen in the enactment by Congress of the Railway Labor Act; and it is with this background that the intent of Congress, in enacting Section 5(2) (f) of the Interstate Commerce Act, here in question, must be determined.

We are of the view that the right of appellant employees is not impaired by the requirement of submission of their claims to an arbitration committee, the formation of which is agreed upon by the duly authorized representative of the employees and by the carrier.

There is no question that appellee elected to proceed under the order of the Interstate Commerce Commission; and the employees, themselves, seek benefits by virtue of the order of the Commission. Even without resort to the controlling provisions of the statute above referred to, it is apparent that both parties have elected to proceed in accordance with various provisions of the order of the Commission.

■ With regard to jurisdiction, there is no question but that there is diversity of citizenship. It is claimed, however, that the case does not involve the requisite jurisdictional amount. The test for determination of the amount in controversy is the value to the plaintiff of the right he is seeking to protect; and the jurisdictional amount is determined by the claim and not by the actual amount awarded. The District Court held that, since the ultimate liability of the carrier could be found to be in excess of $10,000, it had jurisdiction of the action.

We are of the view that the agreement between the carrier and the representative of its employees was binding upon the employees and that the arbitration procedure to be followed was that prescribed in that agreement. We are also of the opinion that the District Court

had jurisdiction since the ultimate liability of the carrier could be found to be in excess of the jurisdictional amount.

In accordance with the foregoing, the judgments of the District Court are affirmed.