Richard NEMITZ, Martin Riley, L. J. Wuertz and Joseph Fitz, suing on behalf of themselves and all others similarly situated, Plaintiffs,

v.

NORFOLK AND WESTERN RAILWAY CO., Defendant.

No. C 68–13.

United States District Court
N. D. Ohio, W. D.

July 25, 1968.

Thomas J. Murray, Sandusky, Ohio, for plaintiffs.

John M. Curphey, Toledo, Ohio, for defendant.

## MEMORANDUM RE DEFENDANT'S MOTION TO DISMISS

DON J. YOUNG, District Judge.

This is an action brought by plaintiffs, on behalf of themselves and all other members similarly situated of Cedar Point Lodge No. 844 of the Brotherhood of Railroad Trainmen, to recover damages incurred from the defendant railway's alleged violation of conditions imposed upon the parties by the Interstate Commerce Commission on June 24, 1964, and to enjoin further violations of the Commission's order. The cause of action is said by plaintiffs to arise under 28 U.S.C. § 1336 and § 1337, and 49 U.S.C. §§ 5(2) (a) (f), 8, 9, and 16(12).

Defendant railway has filed a motion to dismiss on the grounds that the Court lacks jurisdiction of the subject matter, there has been no exhaustion of administrative remedies by the plaintiffs, and the claims set forth have already been settled by the parties. Defendant accompanied the motion with an affidavit and attached exhibits. On the basis of the complaint and attached exhibits, and on the basis of defendant's motion to dismiss accompanied by supporting material, plaintiffs then filed a motion for summary judgment in their favor, attaching to their motion an affidavit and exhibits. In addition to these pleadings and motions, there have also beer numerous reply briefs filed by both parties, urging that their own motions be granted, and attacking the merits of the other party's position in the matter. Since the defendant's motion to dismiss has been accompanied with affidavits and exhibits, and the Court has considered those filings in addition to the bare motion, defendant's motion will be treated as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, and the plaintiffs' motion as a cross motion for summary judgment.

Before the Court rules on the merits of the cross motions for summary judgment, a brief outline of the facts and history of this case is in order. Plaintiffs are four of approximately twenty-five similarly situated members of Cedar Point Lodge No. 844 of the Brotherhood of Railroad Trainmen, suing on behalf of the entire class of about twenty-five members who have similar claims

against the defendant. Prior to October 16, 1964, these plaintiffs were employed by the Pennsylvania Railroad Co. as Brakemen in the Toledo Division of the Company. Before that date, the Connecting Railway Co. was a Pennsylvania Corporation which leased its railroad properties to the Pennsylvania Railroad, and part of its trackage was known as the Sandusky Line, running from Columbus, Ohio and terminating in Sandusky, Ohio. Up until this date in 1964, plaintiffs as brakemen for the Pennsylvania Railroad Co. worked on the Sandusky Line whenever jobs were available for them there, primarily during those months of the year when Lake Erie was not frozen and shipping was possible. During the rest of the year, plaintiffs worked out of other railroad yards owned by the Pennsylvania Railroad Co. and located in the Toledo Division, so that they were able to work throughout most of the twelve months of the year. Since a substantial part of their work was on the Sandusky Line leased by the Pennsylvania Railroad, these plaintiffs all made their homes in the Sandusky, Ohio area. On March 17, 1961, the defendant railway sought authority from the Interstate Commerce Commission by an application bearing Docket No. 21512 to purchase from the Connecting Railway Co. its Sandusky Line and other trackage in Columbus, Ohio. This application was made under the provisions of 49 U.S.C. § 5(2). On June 24, 1964, the I.C.C. approved the defendant's application for authority to purchase the Sandusky Line from the Connecting Railway Co., and the order granting such authority imposed certain conditions for the protection of employees who might be adversely affected by the purchase, pursuant to the mandate in 49 U.S.C. § 5(2) (f) to attach such conditions to an order before it is approved. These conditions concerned the compensation, rules, working conditions, and fringe benefits of employees affected by the purchase, and were made up from the Washington Job Protection Agreement of 1936, and an agreement of January 10, 1962, between the defendant railroad company and the Brotherhood of Railroad Trainmen. Pursuant to the terms of these agreements incorporated in the I.C.C. order, plaintiffs elected to take employment with the defendant railway after October 16, 1964, the date set for the transfer of ownership and control of the Sandusky Line to the defendant railway. Since the date of that transfer, plaintiffs have been able to earn only a fractional amount of what they had been earning monthly before the acquisition by working on the Sandusky Line and the other nearby lines of the Pennsylvania Railroad. Plaintiffs contend that the conditions imposed under the I.C.C. order of June 24, 1964, entitle them to a guaranteed wage equal to their average monthly compensation during the year prior to the acquisition, and that their average monthly compensation during that so-called "test period" is to be based upon their earnings throughout the entire Toledo Division of the Pennsylvania Railroad Co. during that year, divided by twelve. Therefore, the plaintiffs contend, any deficit between that average amount earned before the purchase and what they are able to earn now and since the date of purchase, must be reimbursed them under the conditions embodied in the I.C.C. order of approval. The defendant railway has taken the position that the average monthly earnings under the terms of the I.C.C. order are to be determined by taking the plaintiff's earnings during the test year which resulted from work on the Sandusky Line only, and dividing that figure by twelve months to arrive at an average monthly sum. In order to settle this dispute, plaintiffs attempted through the local chairman of Lodge No. 844 of the Brotherhood to receive the compensation which they claim they have coming under the terms of the I.C.C. order. The defendant railway, however, only paid the plaintiffs displacement allowances based upon a monthly average of earnings from work on the Sandusky Line during the test year, and

at that point the plaintiffs brought the controversy to this Court.

In their motion for summary judgment, plaintiffs contend that the pleadings, affidavits, and admissions on file show that there is no genuine issue as to any material fact, and that since the defendant has placed them "in a worse position with respect to their compensation" in violation of 49 U.S.C. § 5(2) (f) by not complying with the I.C.C. protective conditions, they are entitled to recover their damages as a matter of law. Plaintiffs request that a special master be appointed to determine the amounts due and owing to them from defendant's non-compliance with the I.C.C. order, that the Court compel production of the books and records of defendant railway in order that such a determination may be promptly made, that the defendant railway and its agents be permanently enjoined from failing to comply with the I.C.C. order, and that plaintiffs recover in addition to damages their costs and reasonable attorney's fees under 49 U.S.C. § 8.

In its motion to dismiss, defendant first contends that this Court lacks jurisdiction of the subject matter, in that primary jurisdiction is vested in the National Railroad Adjustment Board under 45 U.S.C. § 153. Where the dispute involves the interpretation and application of collective bargaining agreements and other labor agreements, defendant states that the National Railroad Adjustment Board not only has primary jurisdiction, but mandatory and exclusive jurisdiction as well, and cites numerous holdings of the United States Supreme Court to that effect. Plaintiffs do not dispute that these cases are the law and set forth the general rule of exclusive jurisdiction of railroad labor disputes in the Adjustment Board, but instead contend that this suit falls within a statutory exception to that rule. Plaintiffs contend that they are not seeking to invoke this Court's jurisdiction to hear a dispute arising out of an ordinary labor agreement between a railroad and the Brotherhood, but rather are suing to recover damages on the ground that the defendant railroad has violated certain conditions imposed by the Interstate Commerce Commission upon the parties, and are also seeking to enjoin further violations of these conditions. When defendant railroad purchased the Sandusky Line which the plaintiffs had been working on for the Pennsylvania Railroad, it was participating in a transaction authorized by 49 U.S.C. § 5(2) and § 5(2) (f) of that chapter provides:

"(f) As a condition of its approval, under this paragraph, of any transaction involving a carrier or carriers by railroad subject to the provisions of this chapter, the Commission shall require a fair and equitable arrangement to protect the interest of the railroad employees affected. In its order of approval the Commission shall include terms and conditions providing that during the period of four years from the effective date of such order such transaction will not result in employees of the carrier being in a worse position with respect to their employment, except that the protection afforded to any employee pursuant to this sentence shall not be required to continue for a longer period, following the effective date of such order. Notwithstanding any other provisions of this chapter and chapters 8 and 12 of this title, an agreement pertaining to the protection of the interests of said employees may hereafter be entered into by any carrier or carriers by railroad and the duly authorized representative or representatives of its or their employees."

Plaintiffs contend that the above language not only *authorizes* the I.C.C. to attach conditions to their orders under this chapter, but that Congress has given the Commission a *mandate* to do so. The June 24, 1964, I.C.C. order approving the Norfolk and Western's purchase of the Sandusky Line incorporated by reference at pages 72 and 73 conditions designed to protect the interests of the employees affected, thus complying with the requirements of the statute. These

conditions were based upon agreements of understanding made between the defendant and the Brotherhood of Railroad Trainmen on January 10, 1962, and also provisions of the Washington Job Protection Agreement of 1936, in order that any situations not covered by the former provisions would be taken care of by the latter. Plaintiffs claim that they have been adversely affected with respect to their employment as a direct result of the defendant's purchase of the Sandusky Line, and that therefore they are entitled to damages under 49 U.S.C. § 9, and an injunction under the provisions of 49 U.S.C. § 16(12). Section 9 provides:

"Any person or persons claiming to be damaged by any common carrier subject to the provisions of this chapter may either make complaint to the Commission as hereinafter provided for, or may bring suit in his or their own behalf for the recovery of the damages for which such common carrier may be liable under the provisions of this chapter in any district court of the United States of competent jurisdiction; but such person or persons shall not have the right to pursue both of said remedies, and must in each case elect which one of the two methods of procedure herein provided for he or they will adopt. In any such action brought for the recovery of damages the court before which the same shall be pending may compel any director, officer, receiver, trustee, or agent of the corporation or company defendant in such suit to attend, appear, and testify in such case, and may compel the production of the books and papers of such corporation or company party to any such suit; the claim that any such testimony or evidence may tend to criminate the person giving such evidence shall not excuse such witness from testifying, but such evidence or testimony shall not be used against such person on the trial of any criminal proceeding."

Section 16(12) of Title 49 provides:

"If any carrier fails or neglects to obey any order of the commission other than for the payment of money, while the same is in effect, the Interstate Commerce Commission or any party injured thereby, or the United States, by its Attorney General, may apply to any district court of the United States of competent jurisdiction for the enforcement of such order. If, after hearing, such court determines that the order was regularly made and duly served, and that the carrier is in disobedience of the same, such court shall enforce obedience to such order by a writ of injunction or other proper process, mandatory or otherwise, to restrain such carrier, its officers, agents, or representatives, from further disobedience of such order, or to enjoin upon it or them obedience to the same."

Plaintiffs contend that these two statutory provisions, reinforced by 28 U.S.C. §§ 1336 and 1337, establish jurisdiction in the district courts for a cause of action seeking damages and an injunction. Plaintiffs argue that any claim by the defendant that the Interstate Commerce Act is not paramount over the Railway Labor Act is dispelled by both 49 U.S.C. § 5(11) and the case law. Section 5(11) provides in pertinent part as follows:

"The authority conferred by this section shall be exclusive and plenary, * * * and any carriers or other corporations, and their officers and employees and any other persons, participating in a transaction approved or authorized under the provisions of this section shall be and they are relieved from the operation of the antitrust laws and of all other restraints, limitations, and prohibitions of law, Federal, State, or municipal, insofar as may be necessary to enable them to carry into effect the transaction so approved or provided for in accordance with the terms and conditions, if any, imposed by the Commission, and to hold, maintain, and operate any properties and exercise any control or

franchises acquired through such transaction. * * *"

With regard to the defendant's jurisdictional argument, plaintiff places primary reliance upon the case of Brotherhood of Loc. Eng'rs v. Chicago & Northwestern R.R., 314 F.2d 424 (8th Cir.), cert. denied, 375 U.S. 819, 84 S.Ct. 55, 11 L.Ed.2d 53 (1963). The problems before the Eighth Circuit Court of Appeals, insofar as they are relevant to the instant case, are perhaps best stated by the trial court, reported as Chicago & Northwestern R.R. v. Brotherhood of Locomotive Eng'rs, 202 F.Supp. 277, 283 (S.D.Iowa 1962):

> "The basic question presented herein is, whether the parties are required to follow the procedures of the Railway Labor Act (45 U.S.C.A. § 151 et seq.) in effecting the proposed coordination of North Western's railroad yards at Marshalltown, Iowa, or whether the parties are required to follow the procedures prescribed by the 'stipulation' entered into by the parties and authorized by the Interstate Commerce Commission in its order approving the merger under the provisions of Section 5(2) (f) and Section 5(11) of the Interstate Commerce Act, 49 U.S.C.A. § 5(2) (f), 5(11)."

The District Court held that the Railway Labor Act was inapplicable, and that the parties were required to follow the procedures in the stipulation incorporated in the I.C.C. order.

The Court of Appeals, in affirming the decision of the District Court, considered the policy reasons behind the enactment of § 5(2) (f), and the effect which the Railway Labor Act would have upon Section 5 transactions, noting especially the defeat of the Harrington Amendment. That amendment would have required disapproval of any transactions which would cause *any* change in the existing employment rights of affected employees, and was seen as having the effect of preventing all consolidations to which it related. Railway La-

bor Executives' Association v. United States, 339 U.S. 142, 151, 70 S.Ct. 530, 94 L.Ed. 721 (1950). The 8th Circuit went on to state at page 430 of 314 F. 2d:

> "The Harrington amendment was defeated. We believe that the italicized sentence clearly points out the Court's view that the ICC power to authorize mergers would be completely ineffective if authority to adjust work realignments through fair compensation did not exist. * * * Like the Harrington amendment, the Railway Labor Act, if it applied, would threaten to prevent many consolidations."

The defendant in the instant case argues that because the *Northwestern* case involved a "major dispute" within the framework of the Railway Labor Act, and this case involves a "minor dispute," the two fact situations are distinguishable. In the *Northwestern* case, the defendant union urged that the dispute was a major dispute which must be resolved according to the procedures set out in § 6 of the Railway Labor Act. The Court stated at page 428:

> "We do not deem it necessary to determine whether the dispute here involved is major or minor within the meaning of the Railway Labor Act. * * * If either a major or minor dispute exists here and if the Railway Labor Act applies under the present factual situation, exclusive jurisdiction for resolution of the dispute would rest in the instrumentalities established by the Railway Labor Act."

Of course, the Court of Appeals went on to affirm the trial court's holding that the parties were relieved from the requirements of the Railway Labor Act by virtue of 49 U.S.C. § 5(11), so the classification of disputes by the Railway Labor Act was never an issue in the case. Similarly, in the case at bar, this Court cannot accept the contention that the classification of this dispute as minor serves to distinguish this case from *Northwestern*, nor can it agree with the

defendant's statement that there is nothing in that opinion which is inconsistent with the Railroad's claim here that exclusive jurisdiction lies with the Adjustment Board. While it is generally true that no two cases are exactly alike, and the *Northwestern* case when compared to the instant controversy is not an exception to that general rule, they are enough alike in all material respects that the case is authority for the plaintiff's position here on the question of jurisdiction. The *Northwestern* court, after considering three Supreme Court cases dealing with legislative history and public policy reasons behind the enactment of 49 U.S.C. § 5(2), [Brotherhood of Maintenance Ass'n Employees v. United States, 366 U.S. 169, 81 S.Ct. 913, 6 L. Ed.2d 206 (1961); Railway Labor Executives' Ass'n v. United States, 339 U.S. 142, 70 S.Ct. 530, 94 L.Ed. 721 (1950); United States v. Lowden, 308 U.S. 225, 60 S.Ct. 248, 84 L.Ed. 208 (1939)] stated at page 431 of 314 F.2d:

> "While the three Supreme Court cases just discussed do not deal directly with the specific problem now confronting us (namely, whether the provisions relating to merger and providing for compensation for affected employees take precedence over the provisions of the Railway Labor Act) in the situation here presented we believe that the cases afford very substantial support for the view that Congress intended the I.C.C. to have jurisdiction to prescribe the method for determining the solution of labor problems arising directly out of approved mergers. Thus, like the trial court, we come to the conclusion that to hold otherwise would be to disregard the plain language of § 5(11) conferring exclusive and plenary jurisdiction upon the I.C.C. to approve mergers and relieving the carrier from all other restraints of federal law.

> "Unquestionably, the Railway Labor Act is a federal law. We find no ex-

press or implied exception of the provisions of the Railway Labor Act from the operative provisions of § 5(11)."

██ As the Court points out in a footnote,[1] Congress has demonstrated its ability expressly to exclude the Railway Labor Act from the operation of a statute such as 49 U.S.C. § 5, for the proviso attached to Title I § 10(a) of the Emergency Railroad Transportation Act of 1933 does exactly that.[2] The omission of any such proviso in § 5(11) indicates a congressional intent to include the Railway Labor Act as a "federal restraint" from which the parties to an I. C.C. § 5(2) proceeding are relieved. Defendants argue further, however, that even if a suit based upon a Section 5(2) I.C.C. order may be properly brought in a District Court, the instant suit is based upon alleged violations of a collective bargaining agreement between the railroad and the union, such as is contemplated by the last sentence of § 5(2) (f), and not upon any I.C.C. order. Therefore, the argument runs, the National Railroad Adjustment Board has exclusive jurisdiction, since the cause of action is based upon an ordinary collective bargaining agreement. Defendant cites the case of Arnold v. Louisville & Nashville Rd. Co., 180 F.Supp. 429 (M. D.Tenn.1960), aff'd sub nom. Batts v. Louisville & Nashville Rd. Co., 316 F.2d 22 (6th Cir. 1963), as direct authority for this proposition. The last sentence of § 5(2) (f) provides as follows:

> "Notwithstanding any other provisions of this chapter and chapters 8 and 12 of this title, an agreement pertaining to the protection of the interests of said employees may hereafter be entered into by any carrier or carriers by railroad and the duly authorized representative or representatives of its or their employees."

Plaintiffs do not dispute that this language contemplates the making of subsequent agreements between the parties to a merger or acquisition, and that if such

---

1. 314 F.2d 424, 432 n. 2 (8th Cir. 1963).  2. 48 Stat. 211, 215.

later contracts are not incorporated into the § 5(2) (f) order, then suits upon them are upon the contract and not upon the order. Plaintiffs instead contend that since the agreement here was made in 1962, and incorporated in the order in 1964, the provisions of the agreement which are the basis of the suit were not made "hereafter", but rather are an integral part of the original order. Defendant suggests that the word "hereafter" is intended to mean after the date of enactment of the section, and that when a suit is based upon any agreement between the parties to the Section 5 transaction, and not upon provisions having an independent source from party contracts which are merely inserted by the I.C.C. as "boilerplate" provisions, then *Arnold*, *Batts*, and the Railway Labor Act require the plaintiffs to proceed upon the private agreement in the normal fashion. That is, defendants contend that in such a case, plaintiffs must exhaust all remedies in the agreement and then proceed to their remedies under the Railway Labor Act, and they are not entitled to sue upon the order in the federal courts. This Court does not read *Arnold*, *Batts*, and *Cantrell* [3] to hold that the Railway Labor Act divests this Court of jurisdiction in cases of this nature. These cases instead stand for the proposition that plaintiffs suing upon an agreement made after the I.C.C. order but incorporated within it, are compelled, notwithstanding the provisions in Title 49 allowing suits in the District Courts, to exhaust any remedies found within the agreement before they may be heard in court. An important distinction between *Arnold* and the instant case is that the former involved a situation where the parties to the I.C.C. order supplemented the protective conditions contained in that order with a subsequent agreement. Clearly the District Court had to hold them bound by the arbitration provisions of that later agree-ment and not allow suit on the former provisions alone, else subsequent agreements and the last sentence of § 5(2) (f) alluded to above would be rendered meaningless. This Court is unable to agree with the defendant that the intended purport of the word "hereafter" is after the enactment of the section, instead of after the date of entry of the I.C.C. order. The language of the opinions in *Arnold* and *Batts* does not even support this interpretation, nor do the other cases cited by both parties which deal with § 5(2) (f). In an additional case involving a clash between the policies of the Interstate Commerce Act and the Railway Labor Act, a federal court had occasion to consider the decision in *Arnold*, and the *Arnold* Court's interpretation of the sentence at issue, stating:

"The proper meaning of this clause, we believe, was provided in Arnold v. Louisville & Nashville R.R., supra. There the Court decided that any supplementary agreement between the authorized representative and the carriers must be *adoptive, supplementive* or *implementive*, and that any agreement must deal with the same subject matter as the I.C.C. order. * * * " [4]

It is apparent that the *Clemens* court, as well as the *Arnold* court, interpreted the word "hereafter" in § 5(2) (f) to refer to agreements entered into after the date of the I.C.C. order, and this Court is similarly of the opinion that such a construction is the only proper one. In *Clemens*, supra, the I.C.C. order approving an acquisition included the protective terms of the Washington Job Protection Agreement of 1936, and at a later date, the unions and railroads involved entered into an agreement which seriously abrogated the benefits due employees upon retirement at age sixty-five. One of the many issues presented by the case was whether the plaintiffs, employees who had been terminated at age sixty-five without pay pursuant to

---

3. Louisville & Nashville Rd. Co. v. Cantrell, 316. F.2d 22 (6th Cir. 1963) ; (a companion case to *Batts*, supra.)

4. Clemens v. Central Railroad Company of New Jersey, 264 F.Supp. 551 (E.D. Pa.1967).

this new agreement, could bring their claims of being entitled to benefits under the original I.C.C. order in the federal courts under 28 U.S.C. § 1336. That, of course, is one of the jurisdictional sections invoked by plaintiffs here, and the defendant here, as in *Clemens*, is arguing that the *Arnold* and *Batts* cases preclude jurisdiction in the courts. On this issue, the Court's statement, in pertinent part, was as follows:

> "The plaintiffs rely also on 28 U.S.C. § 1336 which they contend provides an alternate ground of jurisdiction. * * * The defendants argue that Arnold v. Louisville & Nashville R.R., 180 F. Supp. 429 (M.D.Tenn.1960), aff'd sub nom. Batts v. Louisville & Nashville R. Co., 316 F.2d 22 (6th Cir. 1963) supports their contention that this section also does not confer jurisdiction. This argument must be rejected.
>
> "In *Arnold*, * * * the Court held that the action could not be sustained under 28 U.S.C. § 1336. Specifically, the Court held that the plaintiffs' rights were founded not upon the I.C.C. order but upon a subsequent agreement entered into by the unions and carrier *supplementing* that order. The agreement in *Arnold* was significantly different from that in the instant action, because it did not undertake to abrogate any benefits imposed by the Commission for the protection of adversely affected employees, but, on the contrary, sought to supplement them. * * *" (264 F.Supp. 551, 560.)

It must be kept in mind that in the case at bar, plaintiffs are not suing upon *any* agreements which supplement, implement, or abrogate an I.C.C. order: they are suing upon the order itself, and the protective terms originally embodied within it.

The plaintiffs cite Swacker v. Southern Ry. Co., 360 F.2d 420 (4th Cir. 1966), as well as other federal cases, in support of the proposition that suits upon I.C.C. Section 5 orders are prop-

erly brought in the federal district courts. Defendant attempts to distinguish *Swacker* from the case at hand on the ground that the protective order there did not contain provisions derived from agreements between the parties, but rather from the New Orleans Union Passenger Terminal Case, 282 I.C.C. 271. This Court is unable to see what legal effect should be attached to the *source* of the conditions imposed by the Commission pursuant to the mandate of Section 5(2) (f). Whether the protective terms have their genesis in other merger cases, or prior agreements between the parties subject to the order of approval about to be entered by the Commission, should make no difference; the provisions set forth or incorporated by reference in the original I.C.C. order form the basis of the employees' rights. Brotherhood of Locomotive Engineers v. Chicago & Northwestern Railway Company, supra, involved a situation where the protective provisions of the I.C.C. order were based upon a stipulation between the carrier and representatives of the employees, entered into before the order but incorporated within it, and the Court held that it *had* jurisdiction to enforce the terms and conditions of that order. The distinction which the defendant seeks to impose here, based upon the *source* of the protective provisions, is not supported by either Title 49, the case law, or reason, and accordingly must be rejected.

■ In summary, the first branch of defendant's motion to dismiss, based upon the contention that the Court lacks jurisdiction of the subject matter, is not well taken, and will be overruled to that extent.

■■ Defendants also contend that the suit should be dismissed because the plaintiffs have failed to exhaust their administrative remedies. Defendants argue that Section 1(d) of the agreement between the parties made in 1962 contains an arbitration clause, and the plaintiffs have not shown an exhaustion of this remedy. Even if they have ex-

hausted the contractual remedies, or are excused from doing so by the union's inactivity on their behalf, the defendant further contends that plaintiffs have not exhausted their remedies before the Railroad Adjustment Board pursuant to Section 3 First (i) of the Railway Labor Act. Defendant cites several United State Supreme Court cases and an Ohio case as authority for the proposition that administrative remedies must be exhausted before a party may seek judicial relief. Defendant's argument that the plaintiffs have not exhausted their remedies before the Railroad Adjustment Board is clearly untenable in the face of 49 U.S.C. § 5(11) and this Court's holding that plaintiffs are relieved from the restraints of the Railway Labor Act. With regard to defendant's contention that the plaintiffs have not exhausted their administrative remedies under the incorporated agreement of 1962 and other union procedures, a reading of the affidavit of Joseph E. Fitz, local chairman of Lodge 844, reveals that these plaintiffs have reached a deadend street in their attempts to utilize internal union remedies. The doctrine of exhaustion of administrative remedies presupposes the *existence* of adequate and effective remedies. Marsh v. County School Board of Roanoke County, Va., 305 F.2d 94, 98 (4th Cir. 1962). The only remedy which the plaintiffs even arguably should have to exhaust is the provision for arbitration in Section 1(d) of the 1962 agreement, and it does appear that in many of the cases cited by both parties, the courts, although taking jurisdiction, have required arbitration pursuant to the provision in the I.C.C. order. However, in all the cases this Court has considered where the arbitration clause was *permissive* in language rather than mandatory, as it is in the instant case, one of the parties to the litigation was actively seeking to arbitrate the dispute. The holdings of these various courts are not that arbitration must be utilized in all cases before a party can bring the claim before the federal courts on the merits, but rather that where one of the parties has *invoked* the arbitration clause exercising his election under the permissive language, then the dispute *must* be settled by an arbitrator, or the clause would be meaningless.[5] In the case at bar, the plaintiffs through their local chairman attempted in vain to invoke the arbitration clause, and failing to have their claims adjudicated in that manner, now have exercised their right of election to pursue their statutory remedies in the courts. The defendant not having exercised its right to "refer such dispute to an arbitration committee for consideration and determination," the arbitration clause has not taken on a mandatory character under the cases cited in the above footnote. Plaintiffs here are attempting to pursue a remedy specifically created by Congress in 49 U.S.C. §§ 9, 16(12). These statutory provisions are clear on their face, and make no reference to any administrative exhaustion as a mandatory prerequisite. Undoubtedly, Congress in its wisdom foresaw the likelihood of railroad mergers and acquisitions resulting in economic chaos for the employees affected, and political upheaval within the Brotherhood's local lodges. Employees in such a transitory process are in all probability going to find themselves in a weaker position than those not affected with respect to exerting influence upon their bargaining representatives. To avoid undue hardships to these employees from conditions not of their own making, Congress has empowered the I.C.C. to insert provisions for their protection before any such transactions are approved, and allowed the employees affected to come into the federal courts

---

5. New Orleans and North Eastern R. R. Co. v. Bozeman, 312 F.2d 264, 268 (5th Cir. 1963) ; Batts v. Louisville and Nashville R. R. Co., 316 F.2d 22, 26 (6th Cir. 1963) ; Brotherhood of Railroad Trainmen v. Chicago River and Indiana R. R., 353 U.S. 30, 34, 35, 77 S.Ct. 635, 1 L.Ed. 2d 622 (1957) ; Gillikin v. Atlantic & East Carolina Ry., 255 N.C. 228, 120 S.E.2d 847, 858 (1961).

with their claims, exempting them for a short period from the normal avenues of settling railway labor disputes. Indeed, the very situation presented to this Court is probably characteristic of that which Congress envisaged when it enacted 49 U.S.C. §§ 5, 8, 9, and 16, and 28 U.S.C. §§ 1336, 1337. For the reasons above, then, it is the opinion of this Court that the plaintiffs are not required to exhaust any other remedies, and have properly presented their claims in a "district court of the United States of competent jurisdiction."

■ The defendant in its motion to dismiss has also raised a claim of accord and satisfaction, in that the plaintiffs' claims have all been settled. The defendant has attached to its motion the affidavit of Fred S. Yancey, Wage Supervisor for the Norfolk and Western Railway, and various exhibits. Since this amounts to an affirmative defense under Rule 8(c) of the Federal Rules of Civil Procedure, it cannot be the basis of a motion to dismiss. Topping v. Fry, 147 F.2d 715 (7th Cir. 1945). However, Rule 12(b) expressly provides that when such a defense is accompanied by affidavits and exhibits such as is the case here, it may be treated as a motion for summary judgment under Rule 56. The defendant's affidavit states that "all merger-connected claims filed on behalf of the plaintiffs named in this action have been disposed of by agreement between the representative of the Norfolk and Western and the General Chairman of the Brotherhood of Railroad Trainmen, and no dispute exists," and several of the exhibits attached are copies of correspondence concerning the payment of sums allegedly owing these plaintiffs. Plaintiffs, however, contend that there was never any intent on their part to accept the amounts they received as anything else but a partial payment of what is owed them under the I.C.C. order.

■ When a defendant pleads the affirmative defense of accord and satisfaction, it assumes the burden of establishing that defense, Scheanwald v. Economy Savings & Loan Company, 117 Ohio App. 29, 189 N.E.2d 731 (1960) and it has gone forward by setting forth facts upon which this defense could be made out. Since there appears to be a bona fide dispute between these parties, resulting in an unliquidated amount being owed the plaintiffs under the I.C. C. order, settlement for a lesser sum could form an accord and satisfaction as settlement of the dispute would constitute the consideration. Chandler v. State Highway Bd., 61 F.2d 601 (5th Cir. 1932). However, it is also established law that there can be no accord and satisfaction of a disputed claim unless the creditor accepts the lesser amount with the *intention* that it constitute a settlement of the claim, Vilter Mfg. Co. v. Rolaff, 110 F.2d 491, 498 (8th Cir. 1940), and the plaintiffs here allege that there was never any such intention, raising a material question of fact. A plaintiff's motion for summary judgment must be denied if affirmative defenses raise matters, which, if proven, may possibly preclude a judgment in favor of the plaintiff as a matter of law, Velsicol Corporation v. Hyman, 103 F. Supp. 363, 366 (D.Colo.1961), and the defendant can not contend that it has established the defense from its affidavits and exhibits, in the face of the plaintiffs' claims of there being no intention to settle. Therefore, neither of the cross motions for summary judgment on this matter may be granted. At this time, the Court will reserve its ruling upon the plaintiffs' rights under the actual terms incorporated in the I.C.C. order. Plaintiffs' prayer for a special master and injunctive relief of a permanent nature cannot be granted in summary fashion, since their rights upon the order have not yet been determined, and questions of fact remain to be resolved. Therefore, both of the parties' motions for summary judgment must be denied. An order will be prepared accordingly.