**Dennis Wayne McDOW, Appellant,**

v.

**LOUISIANA SOUTHERN RAILWAY COMPANY, Appellee.**

**No. 15100.**

United States Court of Appeals, Fifth Circuit.

Feb. 24, 1955.

Rehearing Denied April 12, 1955.

Louis C. Guidry, Dart, Guidry, Price & Read, New Orleans, La., for appellant.

J. Raburn Monroe, J. Blanc Monroe, New Orleans, La., for appellee.

Before HUTCHESON, Chief Judge, and RIVES and TUTTLE, Circuit Judges.

RIVES, Circuit Judge.

The appellant, plaintiff below, sought judgment against the appellee, defendant below, in the sum of $47,300 with interest and costs representing the full salary he was earning as Vice-President and General Manager of the appellee at the rate of $12,125 per annum for 47 months in advance. The district court entered summary judgment for the defendant, and this appeal ensued.

The appellant's claim is not based upon any contract of employment, or otherwise, with the appellee, but upon certain proceedings before the Interstate Commerce Commission. On February 6, 1953, the New Orleans and Northeastern Railroad Company acquired the majority of the stock of the Louisiana Southern Railway Company, having previously obtained the approval of such acquisition from the Interstate Commerce Commission, as is required by law. In its report the Interstate Commerce Commission in Finance Docket No. 17972, Louisiana Southern Railway Company Control, stated: "In any event our authorization and approval herein will be granted upon the same terms and conditions for the protection of employees as those set forth in Chicago & Northwestern Railway Company Merger, 261 I.C.C. 672." The conditions referred to in the Chicago & Northwestern Railway Company case were as follows:

"During the period of four (4) years from the effective date of our order herein such transaction will not result in employees of the carrier or carriers by railroad affected by such order being in a worse position with respect to their employment, except that the protection afforded to any employee pursuant to this section shall not be required to continue for a longer period following the effective date of such order than the period during which such employee was in the employ of such carrier or carriers prior to the effective date of such order; 261 I.C.C."

This language is based upon 49 U.S. C.A. § 5(2) (f), which reads as follows:

"(f) As a condition of its approval, under this paragraph (2), of any transaction involving a carrier or carriers by railroad subject to the provisions of this chapter, the Commission shall require a fair and equitable arrangement to protect the interests of the railroad employees affected. In its order of approval the Commission shall include terms and conditions providing that *during the period of four years from the effective date of such order such transaction will not result in employees of the carrier or carriers by railroad affected by such order being in a worse position with respect to their employment,* except that the protection afforded to any employee pursuant to this sentence shall not be required to continue for a longer period, following the effective date of such order, than the period during which such employee was in the employ of such carrier or carriers prior to the effective date of such order. Notwithstanding any other provisions of this chapter and chapters 8 and 12 of this title, an agreement pertaining to the protection of the interests of said employees may hereafter be entered into by any carrier or carriers by railroad and the duly authorized representative or representatives of its or their employees." (Emphasis supplied.)

Subsequently, McDow filed a petition in said proceeding in the Interstate Commerce Commission in which he averred that he had been or will be deprived of employment by reason of consummation of the transaction and requested the entry of an order further clarifying the conditions prescribed, and finding him entitled to the protection afforded by such conditions. The New Orleans and Northeastern Railroad Company filed its reply to said petition in which it admitted that McDow had been deprived of his previous position by reason of the transaction, but averred that he was not entitled to protection because he was not an "employee" within the meaning of said conditions. On May 13, 1953, the Commission dismissed McDow's petition on the ground that it did "not present a question relating to the clarification of the order of this Commission but rather the construction of the

statute itself, and therefore, a matter within the jurisdiction of the courts and not of this Commission."

The plaintiff then filed the present action for the purpose of securing a court decision on the question of whether or not plaintiff was an "employee" of the defendant under Section 5(2) of the Interstate Commerce Act of the United States, 49 U.S.C.A. § 5(2) (f), when the Interstate Commerce Commission authorized the New Orleans and Northeastern Railroad Company to acquire control of the Louisiana Southern Railway Company through purchase and ownership of its capital stock pursuant to Section 5(2) of the Interstate Commerce Act, as amended. The district court, stating its reasons,[1] undertook to decide that question on its merits with the defendant.

■■ We do not think that the district court should have decided the merits of the question, because the Louisiana Southern Railway Company never was a party to the proceeding before the Interstate Commerce Commission, and is not bound thereby. The only pleading in that proceeding was the application filed by the New Orleans and Northeastern Railroad Company. The

Louisiana Southern Railway Company was not made a party and did not appear. Pursuant to the authority granted by the Commission, the New Orleans and Northeastern Railroad Company acquired the majority of the stock of the Louisiana Southern Railway Company, but there still remain minority stockholders whose interests have in no way been represented before the Interstate Commerce Commission. The condition imposed by the Commission was imposed upon New Orleans and Northeastern Railroad Company, and not upon Louisiana Southern Railway Company.

It may be that McDow should mandamus the Commission to decide the question; or that, if he has a court remedy at present, it is by bill for declaratory judgment against New Orleans and Northeastern Railroad Company to determine the disputed question, and then, if decided favorably to him, by further petition to the Commission, but on the matter of what is his proper remedy we have no authority to pass and do not pass. We hold only that the complaint stated no claim against Louisiana Southern Railway Company upon which relief could be granted.

Affirmed.

1. "Reasons: This case turns on the definition of the word 'employee'. Nowhere in the Interstate Commerce Act is employee defined. Consequently, its meaning in ordinary every day usage must be accepted, unless the legislative history of Section 5(2) (f) of the Act would indicate otherwise. A study of the legislative history of that section leaves no doubt that the term 'employee' as used therein does not include the vice-president and general manager of a railroad.

Hearings before Committee on Interstate Commerce on Transportation Act of 1940, S. 2009, 76th Cong. 1st Sess. 34 (1939) at page 34, Hearings before Committee on Interstate and Foreign Commerce on H.R. 2531 and 4862, 76th Congress, 1st Sess. (1930) at pages 193, 216, 1291, 1296, 1720, 1721, 1722; 84th Cong.Rec. 9881–7 (1939). Nor does the every day meaning of the word 'employee' include the vice-president and general manager of a railroad."