Samuel M. PINSLY, Appellant,

v.

W. H. THOMPSON, Appellee.

Samuel M. PINSLY, Appellant,

v.

Virgil ATHA, Appellee.

Court of Appeals of Kentucky.

Dec. 10, 1965.

Ben B. Fowler, Dailey & Fowler, Frankfort, for appellant.

Edward F. Prichard, Jr., Marion Rider, Frankfort, for appellees.

CLAY, Commissioner.

Defendant appellant, Samuel M. Pinsly, appeals from two judgments of the Franklin Circuit Court requiring him to arbitrate appellees' rights under a protective order of the Interstate Commerce Commission, which approved the transfer of the Frankfort and Cincinnati Railroad from the then stockholders to the said Pinsly.

At the time of this transfer appellees were employed by or were officers of the company (their exact status is in issue), but in June 1961, their services were terminated. They applied to appellant for arbitration concerning dismissal allowances provided in the ICC order. Appellant refused to arbitrate on the ground the discharges in no way resulted from the transfer. Each of the appellees then brought an action in the Franklin Circuit Court for a judgment declaring their right to arbitration. The trial court adjudged defendant was required to form a committee to arbitrate the question of dismissal allowances allegedly due appellees.

It is required by a provision of the Interstate Commerce Act, 49 U.S.C.A., Section 5(2) (f), that the Commission, in any proceeding for the acquisition of control over a carrier, make a "fair and equitable arrangement to protect the interests of the railroad employees affected". The ICC order in the instant case incorporated the conditions of Oklahoma Railway Company Trustee Abandonment, 257 I.C.C. 177, for the protection of employees displaced by the sale of the railroad. Under the terms of Section 5 of the Oklahoma conditions, an employee dismissed as a result of the transaction approved by the ICC order is due a dismissal allowance. Under Section 8 of same, if any dispute arises as to the protection afforded by these conditions, it may be referred by either party to an arbitration committee. In New Orleans and Northeastern Railroad Company v. Bozeman, 5 Cir., 312 F.2d 264, employees of a railroad who were dismissed after a transfer sought protection under the Oklahoma conditions,

which were incorporated in the provisions of the ICC order approving the transfer just as in the instant case. It was held that Section 8 of the conditions gave either party the *absolute* right to arbitration to settle the dispute.

We are faced with an abundance of difficult problems and a paucity of law. The issues, though not in the order presented in the briefs on appeal, are as follows:

1. Were appellees officers or employees?

2. Did the trial court err in refusing to determine if appellees' termination of employment was the result of the transfer?

3. Must appellees have exhausted their administrative remedy, if any exists, before seeking a judicial remedy?

4. If there is a judicial remedy, do the federal courts have exclusive jurisdiction?

■ 1. Section 5(2) (f) of the Interstate Commerce Act and the ICC order provide protection for "employees". Nowhere in the Act is the term "employee" defined. Appellant argues that appellees were officers, not employees. A federal district court has held a vice-president and general manager of a railroad is not an employee. McDow v. Louisiana Southern Railway Company, 5 Cir., 219 F.2d 650. Appellees were not named as officers in the company's Articles of Incorporation. But the appellant presents other factors and tests as determinative. Appellees rebut with factors and tests of their own. The trial court, in considering the totality of the facts, drew the line between officer and employee so as to include the appellees as employees. Its finding that the appellees are employees within the meaning of the Interstate Commerce Act and the ICC protective order is not clearly erroneous and we will not disturb it.

■ 2. By answer appellant interposed the defense that appellees may not avail themselves of the protection outlined above since their dismissal was for the purpose of increasing the efficiency of the operation of the railroad and was unrelated to appellant's acquisition of control. The trial court, in granting appellees' motion to strike this defense, held the matter should be determined by arbitration.

Appellant insists that he is entitled to a *judicial* determination that appellees are not entitled to dismissal allowances because such dismissals were not occasioned by the transfer of ownership. This, however, appears to be one of the very questions which the protective order contemplates could become a matter of arbitration. For example, Section 6 of the order refers to an employee "affected by the transaction" (transfer of ownership). Section 8 provides "in the event any dispute or controversy arises with respect to the protection afforded" by condition 6, etc., which the parties cannot settle, either party may refer the matter to arbitration. We certainly have here such a dispute or controversy. That the subject matter of this dispute must be arbitrated, and not decided by a court, was the basis of the decision in New Orleans and Northeastern Railroad Company v. Bozeman, 312 F.2d 264 (above cited).

The judicial question in this case is whether appellees have a right to invoke arbitration procedure. It is not whether they win or lose. If the court undertook to determine such question, it would bypass the arbitration rights of the parties and thereby effectively destroy those rights.

From a practical as well as a legal standpoint, this issue lies within the province of arbitration because it can better be decided by those more closely related in the railroad business to the problem involved. Also from the practical standpoint, if such an issue as this were decided by a court, there would seem to be nothing significant left to arbitrate.

3. Appellant contends that appellees could seek no judicial remedy until they had exhausted their administrative remedy. The argument is based on the assumption that some prescribed and/or adequate remedy exists before the Interstate Commerce Commission.

■ Appellant has failed to point out any prescribed administrative remedy and we have been unable to find one. The whole doctrine of exhaustion of administrative remedies is based upon the existence of a specific remedy provided by statute. See 2 Am.Jur.2d, Administrative Law, section 595 (page 426). In the principal case relied upon by appellant, Macauley v. Waterman S. S. Corp., 327 U.S. 540, 66 S.Ct. 712, 90 L. Ed. 839, the court simply recognized that a party could not invoke a judicial remedy (by injunction) and thereby bypass specific administrative procedures which had been prescribed for settlement of the controversy involved. Other cases cited by appellant do not support his contention that an administrative remedy exists to settle the present controversy. While appellant claims the parties seek *clarification* of an administrative order, what is actually sought is the enforcement of the order.

■ Precisely the same character of dispute we have here was involved in the Bozeman case, heretofore cited. The employer applied to the Interstate Commerce Commission for "clarification" of this arbitration provision (Section 8). The Commission declined to entertain the proceeding on the ground that the application of protective order conditions should be settled as provided in those conditions or by the courts. Neither the Commission, nor the court in that case, would recognize the existence of an administrative remedy with respect to a controversy of the kind we have before us. As far as we can discover, none exists.[1]

4. The final contention of appellant is that the state court does not have jurisdiction of this controversy because the Interstate Commerce Act confers exclusive jurisdiction on the federal courts. This argument is based upon Sections 8 and 9 of the Act. (49 U.S.C.A. Sections 8 and 9) Section 8 provides:

"In case any common carrier subject to the provisions of this chapter shall do, cause to be done, or permit to be done any act, matter, or thing *in this chapter* prohibited or declared to be unlawful, or shall omit to do any act, matter, or thing *in this chapter* required to be done, such common carrier *shall be liable* to the person or persons injured thereby *for the full amount of damages sustained in consequence of any such violation of the provisions of this chapter,* together with a reasonable counsel or attorney's fee, to be fixed by the court in *every case of recovery,* which attorney's fee shall be taxed and collected as part of the costs in the case." (Our emphasis)

Section 9 provides in part:

"Any person or persons *claiming to be damaged* by any common carrier subject to the provisions of this chapter may either make complaint to the Commission as hereinafter provided for, or may bring suit in his or their own behalf *for the recovery of the damages* for which such common carrier *may be liable under the provisions of this chapter* in any district court of the United States of competent jurisdiction; * * *." (Our emphasis)

It is said that since this proceeding constitutes an attempt to enforce an order issued by the Interstate Commerce Commission under the Act, it is a proceeding of which the United States district courts have exclusive jurisdiction under Section 9 quoted above. Appellees counter with the prop-

---

1. In appellees' brief it is stated that appellees did seek relief from the Commission which was unavailing.

osition that they acquired under the protective order a *common law* contract right which was enforceable in the state court under Section 22 of the Interstate Commerce Act (49 U.S.C.A., Section 22) which provides:

> "* * * nothing in this chapter contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions are in addition to such remedies."

We believe there is a more realistic solution to the problem. It simply requires recognition of the fact that this proceeding is not a suit for damages within the scope of Sections 8 and 9 above quoted.

In the first place, if we assume this was in the nature of a suit for damages, they do not arise from a violation of any provision of the Interstate Commerce Act. In Arnold v. Louisville and Nashville Railroad Company, D.C., 180 F.Supp. 429, 434, it is stated, with authorities in support:

> "To sustain a recovery under these sections, (Sections 8 and 9) it must appear that damages arise from the violation *of some provision of the act itself.*" (Our emphasis.)

Appellant is not charged with violating any provision of the Act.

Secondly, even if failure to comply with the ICC order constituted a violation of the Interstate Commerce Act itself, appellees' right to damages could not accrue until a determination that they were entitled to dismissal allowances under the ICC order. This, we have determined, must be left to arbitration. Until, as the result of arbitration, appellees have established that they are entitled to dismissal allowances under the ICC order, they have no right of recovery which would entitle them to damages for violation of the order or the Act.

Finally, this lawsuit cannot be entertained as one seeking the recovery of damages. Even though appellees asked by way of alternative relief for dismissal allowances (which may or may not constitute "damages"), it is clear from what has been said above that they do not have a right to such relief until arbitration is completed in their favor and this Court could not grant such relief at this time. Therefore, the suit resolves itself into a claim for a declaration of rights, and the remedial provisions of Section 9 do not apply. Consequently, our state court had jurisdiction under the provisions of KRS 418.045.

The judgment is affirmed.