**NEW ORLEANS AND NORTHEAST-
ERN RAILROAD COMPANY,
Appellant,
v.
J. U. BOZEMAN et al., Appellees.
No. 19870.**

United States Court of Appeals
Fifth Circuit.

Jan. 17, 1963.

As Modified on Denial of Rehearing
En Banc March 1, 1963.

Andrew P. Carter, Walter J. Suthon, Jr., New Orleans, La., James I. Hardy, Washington, D. C., O. Winston Cameron, Meridian, Miss., Malcolm L. Monroe, New Orleans, La., R. Allan Wimbish, Washington, D. C., Floyd, Cameron & Deen, Meridian, Miss., of counsel, for appellant.

Thomas D. Bourdeaux, Meridian, Miss., James L. Highsaw, Jr., Wm. G. Mahoney, Washington, D. C., Ethridge, Minniece & Bourdeaux, Meridian, Miss., Mulholland, Robie & Hickey, Washington, D. C., of counsel, for appellees.

Before TUTTLE, Chief Judge, and WISDOM and GEWIN, Circuit Judges.

TUTTLE, Chief Judge.

This appeal requires the construction of a section of the conditions imposed by the Interstate Commerce Commission by an order by which it authorized the purchase by appellant of the Meridian [Mississippi] Terminal Company, the said conditions being generally known as the "Oklahoma conditions" for the protection of railroad employees who may be adversely affected by a merger or acquisition. The case comes here by an appeal from an order of the District Court dis-

missing the petition of the appellant seeking declaratory judgment as to the meaning of this condition, and granting the affirmative relief sought by appellees as counter-claimants demanding that appellant "perform specifically paragraph 8 of the 'Oklahoma conditions,'" and proceed with the arbitration provisions of paragraph 8, the section in question.

The underlying facts are that appellant sought permission from the Interstate Commerce Commission to acquire Meridian Terminal Company. The relevant provisions of the statute dealing with such acquisitions provide that the Commission, as a condition of any approval granting such acquisition, to provide "a fair and equitable arrangement to protect the interest of the railroad employees affected." 49 U.S.C.A. § 5(2) (f).

The Commission authorized the acquisition upon the finding that it would be in the public interest, and it prescribed certain conditions for the payment of monetary allowances to employees if their employment was "adversely affected" as a result of the transaction.

Section 8 of the conditions provided as follows:

"In the event that any dispute or controversy arises with respect to the protection afforded by the foregoing conditions Nos. 4, 5, 6, and 7 which cannot be settled by the carriers and the employee, or his authorized representatives, within 30 days after the controversy arises, it may be referred, by either party, to an arbitration committee for consideration and determination, the formation of which committee, its duties, procedure, expenses, et cetera, shall be agreed upon by the carriers and the employee, or his duly authorized representatives."

Several months after the acquisition was completed appellant dropped several employees whose duties they said had been made unnecessary by improvements in the operation of the yards, thus giving rise to the claim by the employees that they were entitled to protection under the provisions of the I.C.C. order. Their contention in this respect was rejected by the Company, which took the position that terminations in question did not result from the acquisition. Thereafter, desultory negotiations took place between representatives of the employees, the appellees here, and the railroad company. An impasse having been reached, the appellant filed a petition with the Interstate Commerce Commission requesting clarification of the arbitration clause. The Commission refused to reopen the proceedings, stating in an order of December 31, 1959, that: "Disputes as to the application of the conditions to employees are properly for settlement in the manner set forth in the aforementioned conditions [arbitration] or by the courts."

Subsequently, appellees wrote again to appellant on May 26, 1960, requesting that the appellees be paid the balances under the employee conditions prescribed in the Commission's initial order. Appellant replied, declining the request. Thereupon appellees wrote on June 2nd stating:

"Unless you are willing to reconsider this matter and settle it in line with the stipulations here referred to, you are requested to set a date for conference at which time all necessary action may be taken to submit this matter to arbitration, pursuant to Section 8 of I.C.C. Finance Docket No. 14221."

To this a reply was received on June 10th stating why the Company would not settle the dispute, and stating that the writer was "not agreeable to submitting this matter to arbitration." Thereafter, while counsel for the two parties were conferring, the appellant, on July 5, 1960, filed the complaint for declaratory judgment.

The trial court overruled appellees' motion to dismiss the complaint. This Court denied permission to take an interlocutory appeal from such order; thereafter the appellees filed their answer to the complaint, in which they insisted upon

their right to have arbitration of the dispute under paragraph 8. The case then proceeded to trial on the complaint, the answer, the counterclaim and the reply of appellant thereto. The District Court originally issued a letter opinion in which it stated that the provision for arbitration was not mandatory and was not exclusive. The Court also proceeded to find on the basis of the pleadings before it that "there was no direct or proximate causal connection between the sale and the abolishment of these jobs." However, before issuing a formal judgment in the matter the Court notified the parties that it was giving further consideration to the case. Thereafter, the Court while adhering to its view that on the merits it did not appear that the loss of jobs by the appellees was a result of the acquisition, it reversed its position on the arbitration issue and made the following judgment:

"The Plaintiff was preparing this suit while it was continuing to meet with the Defendants' representatives to seek a settlement of their differences and while both parties remained adamant in their positions. On each occasion the Defendants insisted on arbitration and the Plaintiff repeatedly rejected such overtures. It is the opinion of the Court that the Defendants had a vested right to submit this controversy to arbitration by reason of having elected to do so prior to this suit. Such right at the election of the Defendants could not be divested by unilateral decision of the Plaintiff and its repeated refusal to arbitrate this factual question as required by the Oklahoma Conditions. The obligation to arbitrate at the election of the Defendants became a fixed condition upon which the Commission predicated its approval of this sale."

The final judgment also granted the counterclaim and directed the appellant "to perform specifically paragraph 8 of the 'Oklahoma Conditions' · * * * by agreeing with the defendants on the formation, duties, procedure, expenses, etc., of an arbitration committee for the settlement of the current dispute between the parties as provided for therein."

Appellant's attack on his judgment is several sided. It says, in the first place, that the second order of the Commission, dated December 31, 1959, is binding, and it says that that order clearly states that disputes of this kind may be settled "by the courts." Further, it contends that the appellees did not themselves make the election to invoke arbitration if such election could be bindingly made as against the company. Then, the company argues that the statute does not require compulsory arbitration, and that arbitration of this type can not be imposed without the consent of the parties.

We conclude that Section 8 of the Conditions gave either party the absolute right to select arbitration as a means for settling the dispute and when such selection was made then arbitration was mandatory on the other party. We also conclude that the appellees made this election, as found by the trial court, and we find that there is no prohibition in the statute against giving effect to this term of the I.C.C. order.

Neither party cites us to any case in which a court has directly passed upon a complaint to compel arbitration under paragraph 8 of the "Oklahoma conditions." We are thus required to construe the language of the I.C.C. orders as best we may. In doing so, we follow the injunction of the Supreme Court touching on the construction of statutes, which has most recently found expression in the case of Flora v. United States, 357 U.S. 63, 78 S.Ct. 1079, 2 L.Ed.2d 1165. The Court there said at page 65, 78 S.Ct. at page 1081:

"In matters of statutory construction the duty of this Court is to give effect to the intent of Congress, and in doing so our first reference is of course to the literal meaning of words employed."

We think that the second order of the Commission was not intended as an amendment to the first order. We think

the Commission in declining to reopen the proceedings, merely stated that it was not intending to settle these disputes itself. In doing so, it said they are "properly for settlement in the manner set forth in the aforementioned conditions [arbitration] or by the courts." We think this merely meant that the disputes were to be settled either by arbitration, if that is what the party having the right to do so selected, or, if not, then by the courts. We do not think it was an effort by the Commission to change the provision in the original order which gave an option to either party to choose arbitration to something different.

■ Turning now to the meaning of the original language touching on arbitration, we think the language could hardly be plainer that the Commission order intended to give either party affected by the acquisition the absolute right to refer any dispute of the nature here in issue to arbitration. It says, the dispute "may be referred, by either party, to an arbitration committee for consideration and determination." It would be meaningless for the order to provide that the appellees may refer the dispute to arbitration if such provision were to be construed as also meaning that such election could be defeated by the refusal of the appellant to acquiesce. The language plainly means that either party may make an election, binding on the other, to refer the dispute to arbitration. We think this is the teaching of the Supreme Court's opinion in Brotherhood of Railroad Trainmen v. Chicago River and Indiana R. R. Co., 353 U.S. 30, 77 S.Ct. 635, 1 L.Ed.2d 622, which rejected the argument here made by appellant, which in that case was advanced by a railway labor organization. The Supreme Court there said:

"Such an interpretation would render meaningless those provisions in the Act which allow *one* side to submit a dispute to the Board, whose decision shall be final and binding on *both* sides. If the Brotherhood is correct, the Adjustment Board could act only if the union and the carrier were amenable to its doing so. The language of § 3, First, reads otherwise and should be literally applied in the absence of a clear showing of a contrary or qualified intention of Congress." (Emphasis theirs.) 353 U.S. 30, 34, 35, 77 S.Ct. 635, 637.

■ Turning now to the argument that no binding election had been made by the appellees, we find it equally unsupported. Representatives of the appellees expressly called on the representative of the company having the matter in charge to meet for the purpose of setting up arbitration if the company did not change its view with respect to the granting of the appellees' requests. These requests were not granted, and the company representative stated that he would not submit the matter to arbitration. The language of his refusal could not be construed other than a flat denial of the appellees' right to insist on arbitration. Under these circumstances appellees had every right to rely upon this refusal as an anticipatory breach of the agreement to arbitrate without the necessity of their taking any other preliminary steps towards setting up an arbitration panel.

■ As to appellant's contention that the Interstate Commerce Act did not require compulsory arbitration and that arbitration can not be imposed on parties without their prior agreement, it is sufficient to say that the election of appellant to proceed with the acquisition under the order of the Interstate Commerce Commission was voluntary on its part. It could accept the authorization to purchase the facility with the conditions as stated in the order, or it could reject it. Having accepted the conditions by accepting the authorization in the order, it is bound by the conditions in the same manner as it would be bound if it were a private contract entered into between the parties themselves.

The judgment of the trial court is Affirmed.