Richard NEMITZ et al., Plaintiffs-Appellees,

v.

NORFOLK AND WESTERN RAILWAY COMPANY, Defendant-Appellant.

No. 20326.

United States Court of Appeals, Sixth Circuit.

Jan. 15, 1971.

John M. Curphey, Toledo, Ohio, Thomas Maguire, Toledo, Ohio, Howard J. Trienens, Martin M. Lucente, Ronald J. Sklar, Chicago, Ill., on the brief; Robison, Curphey & O'Connell, Toledo, Ohio, Sidley & Austin, Chicago, Ill., of counsel, for appellant.

Thomas J. Murray, Jr., Sandusky, Ohio, Murray & Murray, Sandusky, Ohio, on the brief, for appellees.

Before CELEBREZZE and MILLER, Circuit Judges, and WEINMAN, District Judge.*

WILLIAM E. MILLER, Circuit Judge.

This action arose out of the merger of the Norfolk and Western Railway Company with the New York, Chicago & St. Louis Railroad Company (Nickel Plate), the lease by the Norfolk and Western of the Wabash Railroad Company, and the purchase by the Norfolk and Western of the Sandusky Line from the Pennsylvania Railroad. These transactions were authorized in 1964 by the Interstate Commerce Commission pursuant to the Interstate Commerce Act, 49 U.S.C. Sec. 5(2), 324 I.C.C. 1 (1964).

The appellees are employees of the Sandusky Line which was a part of the Toledo Division of the Pennsylvania Railroad. Sandusky was a seasonal line, operating only when Lake Erie was not frozen. Hence, the employees of Sandusky prior to the merger could work on that line only part of each year. During the remainder of the year these employees worked on other parts of the Toledo Division of the Pennsylvania Railroad.

The appellees took the option given them to remain with Sandusky after its purchase by the Norfolk and Western, primarily because their respective residences were in Sandusky, Ohio.

In 1962, prior to the I.C.C. authorization of the merger, the union to which the appellees belonged, the Brotherhood of Railroad Trainmen, and several other unions, entered into an agreement with the Norfolk and Western. This agreement provided, *inter alia*, that the employees affected by the merger would

not be placed in a worse position financially because of the proposed merger. The 1964 I.C.C. order authorizing the merger, lease, and purchase dealt with the protective benefits to be afforded the affected employees. Subsequently, a dispute arose as to payment of the protective benefits. In order to reach a compromise before arbitration was to have been initiated, the Norfolk and Western and the Brotherhood of Railroad Trainmen entered into Implementing Agreement 1-A (1967). Compensation for the appellees, according to this Agreement, would be based on the amount of time worked on the Sandusky Line alone—not, as the 1962 agreement provided, the time worked on the entire Toledo Division. The "test period," as in the 1962 agreement, was the twelve months prior to the effective date of the merger. The appellees petitioned their union to initiate arbitration in order that they might receive those benefits to which they maintained they were entitled under the 1962 agreement.[1] The Brotherhood of Railroad Trainmen refused to arbitrate. Appellees then instituted this action in the court below.

The complaint alleged that the provisions of the 1962 agreement were incorporated into the I.C.C. order of 1964; that the appellees were thus guaranteed by that order that they would not be placed in a worse position as to compensation as a result of the merger; that they were so placed by virtue of the merger; and that the Norfolk and Western had violated the provisions of the I.C.C. order. The appellees invoked the jurisdiction of the District Court to recover damages under 49 U.S.C. Sec. 9,[2] an injunction under Sec. 16(12), and

---

* Honorable Carl A. Weinman, Chief Judge, United States District Court for the Southern District of Ohio, sitting by designation.

1. The 1962 agreement contained an arbitration clause providing generally that any dispute or controversy arising between the Norfolk & Western and the union "with respect to the interpretation or application of any provision of this agreement * * * may be referred by either party to an arbitration committee for consideration and determination."

2. "Any person or persons claiming to be damaged by any common carrier subject to the provisions of this chapter may either make complaint to the Commission as hereinafter provided for, or may bring suit in his or their own behalf for the recovery of the damages for which such

attorneys' fees and costs under Sec. 8. The damages sought were based on the difference between compensation for time on the Sandusky Line alone during the test period and time worked on the entire Toledo Division,[3] including the time on the Sandusky Line, during the test period.

The appellant filed a Motion to Dismiss on three grounds: (1) lack of subject matter jurisdiction; (2) accord and satisfaction of the claims of the appellees;[4] and (3) the failure of the appellees to exhaust their administrative remedies. The appellees filed a Motion for Summary Judgment. The District Court denied both motions. Nemitz v. Norfolk & Western Ry Co., 287 F.Supp. 221 (N.D.Ohio 1968). Following the appellant's answer to the appellees' complaint, the District Court granted a second motion of appellees for summary judgment, from which appellant Norfolk and Western appealed. Nemitz v. Norfolk & Western Ry. Co., 309 F.Supp. 575 (N.D.Ohio 1969).

There are two primary issues to be resolved:

(1) Whether the District Court had subject matter jurisdiction to hear the appellees' action.

(2) Whether the appellees failed to exhaust their administrative remedies.

In order to cast the issue as to subject matter jurisdiction in the proper context, a brief statement of the District Court's basis for finding jurisdiction is necessary.

The District Court found that the 1962 agreement had been incorporated into the 1964 I.C.C. order, such incorporation being necessary because Title 49 U.S.C. Sec. 5(2)(f) establishes minimum levels of protection for employees affected by the merger. By incorporating an agreement for the protection of employees in its order, the I.C.C. was merely fulfilling the duty imposed upon it by Sec. 5(2)(f). The effect of such incorporation is that the rights asserted by the appellees flow from the order and not from the collective bargaining agreement of 1962. Therefore, the District Court found jurisdiction under 49 U.S.C. Secs. 5 and 9, and concluded that the National Railway Labor Adjustment Act did not apply. Furthermore, the District Court held that the appellees were not compelled to proceed under the 1962 agreement to arbitrate the basic dispute, but it did remit the parties to arbitration to determine the amounts to which the appellees are entitled.

The District Court then held that Implementing Agreement 1-A of 1967 did not deprive the District Court of jurisdiction. The basis of this holding was that the subsequent agreement was void as a matter of law in that it abridged the rights and protections afforded by the statute and the I.C.C. order.

Appellant argues that the rights asserted flow from a collective bargaining agreement and hence are to be determined by arbitration under the provisions of the Railway Labor Act. It further insists that Implementing Agreement 1-A superseded the I.C.C. order.

common carrier may be liable under the provisions of this chapter in any district court of the United States of competent jurisdiction; but such person or persons shall not have the right to pursue both of said remedies, and must in each case elect which one of the two methods of procedure herein provided for he or they will adopt."

3. We construe the 1962 agreement as incorporated in the I.C.C. order as meaning that the appellees were to suffer no loss of compensation based upon their inability to work throughout the entire Toledo Division—not limited to their earnings on the Sandusky line alone. We reject the contention of appellant that the 1962 agreement intended to impose this limitation on compensation as distinguished from the "duration of employment" limitation of Sec. 3. However, we also construe the agreement as meaning that the employees shall not be protected to the extent that any loss of earnings is due to "a furlough because of reduction or decline in volume of traffic or revenues."

4. The defense of accord and satisfaction, however, is not urged on appeal and will not be discussed herein.

Essentially three subsidiary issues underlie a determination of subject matter jurisdiction of the court below. These issues are: (1) whether the appellees are required to proceed under the 1962 collective bargaining agreement; (2) whether the 1962 agreement was incorporated into the I.C.C. order of 1964; and (3) whether the 1967 Implementing Agreement 1-A superseded the I.C.C. order.

■ In deciding the jurisdictional issues thus presented, the Court must dispose of a preliminary question: whether the Railway Labor Act, 45 U.S.C. Sec. 153 et seq., is applicable, even if it be assumed that the rights here asserted by the appellees stem from an I.C.C. order. If the Railway Labor Act applies, jurisdiction does not lie. Brotherhood of Locomotive Engineers v. Chicago & Northwestern Ry. Co., 314 F.2d 424 (8th Cir.), cert. denied, 375 U.S. 819, 84 S.Ct. 55, 11 L.Ed.2d 53 (1968).

Section 5(11) of 49 U.S.C. provides in part, that "the authority conferred by this section shall be *exclusive* and *plenary*." (Emphasis added.) Various cases dealing with consolidations pursuant to 49 U.S.C. Sec. 5 justify our emphasizing the words "exclusive" and "plenary." Brotherhood of Loc. Eng. v. Chicago & Northwestern Ry. Co., *supra*; Brotherhood of Maintenance of Way Employees v. United States, 366 U.S. 169, 81 S.Ct. 913, 6 L.Ed.2d 206 (1961); Railway Labor Executives' Association v. United States, 339 U.S. 142, 70 S.Ct. 530, 94 L. Ed. 721 (1950); United States v. Lowden, 308 U.S. 225, 60 S.Ct. 248, 84 L.Ed. 208 (1939). These cases dealt with the propriety of granting exclusive authority to the Interstate Commerce Commission in consolidations pursuant to 49 U.S. C. Sec. 5, and with the intent of Congress as evidenced by the defeat of the Harrington Amendment.[5] The cumulative effect of the decisions is that there must be exclusive and plenary authority

in the I.C.C. to achieve the purposes of the Act. The authority vested in the I.C. C. to effectuate proposed mergers would be rendered ineffective if authority to adjust work realignments through fair compensation did not exist. Since, under the Railway Labor Act, employees cannot be compelled to accept or arbitrate new working rules or conditions, the application of the Railway Labor Act to situations such as that presented here, like the Harrington Amendment, would threaten to prevent many consolidations, and, therefore, should not be applied. Brotherhood of Loc. Eng. v. Chicago & Northwestern Ry, Co., *supra*.

■ It is the contention of the appellant that the I.C.C. did not incorporate the protective conditions for the appellees into its 1964 order authorizing the merger. The argument proceeds that since the provisions of the 1962 agreement were not incorporated, the rights asserted by the appellees cannot stem from the order, and, therefore, the federal courts are without jurisdiction. The reasoning in support of this contention is that: (1) the appellees' suit is based on protective benefits afforded them under the 1962 agreement; (2) the 1962 agreement was an agreement made pursuant to the last sentence of 49 U.S.C. Sec. 5 (2) (f) and was independent of the I.C.C. order; (3) Section 5(2) (f) was intended as an alternative to I.C.C. imposed protective conditions for the benefit of affected employees; and (4) the I.C.C. not having incorporated these conditions federal jurisdiction does not lie. Appellant adds that the appellees' union affirmed this interpretation when it refused to arbitrate.

The position now taken by the appellant is contrary to its position previously taken. For example, it is to be noted that the appellant's Answer to the Complaint of the appellees admitted that the 1962 agreement was incorporated into the authorization order of the I.C.C. in

---

5. The Harrington Amendment would have brought about a job freeze of existing employees and, thus, "threatened to prevent all consolidations to which it re-

lated." *Railway Labor Executives' Assoc. v. United States*, 339 U.S. 142, 150–151, 70 S.Ct. at 534, 94 L.Ed. 721 (1950).

1964. Also, all interested parties entered into a "Stipulation and Agreement" before the Commission, which provided that the provisions of the 1962 agreement "shall be applied for the protection of the interests of the employees * * * as required by § 5(2) (f) of the Interstate Commerce Act. * * * "

After a consideration of the record in the instant case, we are of the opinion that all parties understood that the provisions relating to benefits for affected employees in the 1962 agreement would be, and were, incorporated into the I.C. C. order. In addition, we are of the opinion that the Commission, by incorporating the 1962 agreement, was fulfilling the requirement of 49 U.S.C. Sec. 5(2) (f), which provides, in part:

As a condition of its approval, under this paragraph * * *, the Commission *shall require* a fair and equitable arrrangement to protect the interests of the railroad employees affected. 49 U.S.C. Sec. 5(2) (f). (Emphasis added.)

The applicable case law tends to support the interpretation of the words, "shall require," as imposing upon the I.C.C. the duty to make provisions for the protection of affected employees. Railway Labor Executives' Assoc. v. United States, *supra;* Brotherhood of Maintenance of Way Employees v. United States, *supra;* Clemens v. Central R. R. Co. of New Jersey, 264 F.Supp. 551 (E.D.Penn.1967), reversed on other grounds, 399 F.2d 825 (3rd Cir. 1968), cert. denied, 393 U.S. 1023, 89 S.Ct. 633, 21 L.Ed.2d 567 (1969), and others.

In this regard, the appellant argues that the I.C.C., as it has in various other cases cited by the appellant, noted that it would not impose protective benefits for the appellees because of the existence of the 1962 agreement. Since, as appellees argue, the 1962 agreement was made pursuant to the last sentence of Sec. 5(2) (f), and since the I.C.C. stated that it need not provide for protective conditions by virtue of the fact that an agreement dealing with protective conditions was already in existence, appellant reasons that the 1962 agreement was not incorporated into the order. However, the existence of a prior agreement does not allow the I.C.C. to ignore its statutory duty. On the contrary, the I.C.C. is required, as we have noted, to impose employee protective conditions whether derived from an agreement or independently formulated by the I.C.C. This is precisely the situation now before the Court. The I.C.C. first determined that the protective conditions in the 1962 agreement were adequate and then concluded that it did not deem itself compelled to elaborate on those conditions, merely stating that the conditions were subject to the order. It is significant that, regarding the protection of employees not covered by the 1962 agreement, the I.C.C. did separately impose protective conditions in the same order. We find that the 1964 order in disclaiming the necessity for protective conditions, must be construed as meaning that such conditions need not be spelled out or elaborated in the 1964 order since they were sufficiently covered by the 1962 agreement, a construction which is consistent with the theory of incorporation as well as with the I.C.C's statutory duty. We conclude that the rights set forth in the 1962 agreement were incorporated in the 1964 order and for purposes of federal court jurisdiction stem from such order. The appellant in taking a contrary position relies upon the case of Arnold v. Louisville & Nashville R. R. Co., 180 F.Supp. 429 (M.D.Tenn.1960), as affirmed by the Court of Appeals in Batts v. Louisville & Nashville R. R. Co., 316 F.2d 22 (6th Cir. 1963). We do not deem *Arnold* to be controlling on the facts presented here. See Clemens v. Central R. R. Co. of New Jersey, 264 F. Supp. 551 (E.D.Penn.1967), reversed on other grounds, 399 F.2d 825 (3rd Cir. 1968), cert. denied, 393 U.S. 1023, 89 S. Ct. 633, 21 L.Ed.2d 567 (1969). In *Arnold,* the plaintiffs were railroad employees seeking damages in federal district court for breach of protective conditions allegedly flowing from an I.C.C.

order authorizing a merger affecting the plaintiffs. As contemplated by the order, the plaintiffs' union had entered into a collective bargaining agreement with the railroad subsequent to the I.C.C. order in question. This collective bargaining agreement dealt with conditions and arrangements for the protection of employees and sought to supplement the prior I.C.C. order as to these conditions. In asserting their rights to damages, the plaintiffs argued that their representatives were without authority to "bargain away" rights derived from the I.C.C. order. In rejecting the plaintiffs' argument, the District Court held:

> Under this provision of the statute [the last sentence of Sec. 5(2) (f)] as the Court construes its meaning and effect, the employees may, through a collective bargaining agreement with the railroad, make provisions for their own protection by *adopting, supplementing* or *implementing* the provisions made by the Commission for their protection. Arnold v. Louisville & Nashville R. R. Co., *supra,* 180 F. Supp. 433–434. (Emphasis added.)

The District Court then concluded that the plaintiffs' representatives properly exercised their authority in reaching such an agreement with the railroad and that the agreement displaced the I.C.C. order insofar as it related to the same subject matter. Since the rights asserted necessarily stemmed from the agreement and not the I.C.C. order, those rights could be vindicated neither in an action to enforce an order of the I.C.C., under 28 U.S.C. Sec. 1336, nor in an action for damages under 49 U.S.C. Secs. 8 and 9. Although the *Arnold-Batts* decision did not reach the question of whether the Railway Labor Act was applicable, the Court did observe that, even if the Railway Labor Act was inapplicable, the plaintiffs were required to exhaust their administrative remedies. Arnold v. Louisville & Nashville R. R. Co., *supra,* 180 F.Supp. at 434.

Appellant next contends that Implementing Agreement 1–A superseded the Commission's order of 1964. The contention is that the effect of the 1967 agreement was to preclude the appellees from asserting their claims in the District Court and to vest exclusive jurisdiction in the National Railroad Adjustment Board. This argument also addresses itself to the subject matter jurisdiction of the District Court.

The District Court ruled that Implementing Agreement 1-A was void as a matter of law because it abridged the rights and protections afforded by the statute and the I.C.C. order.

The appellant again asserts that the last sentence of Sec 5(2) (f) is an alternative to the first two sentences thereof. Appellant contends that no minimum level of protection for employees is required by the Act and that a voluntary collective bargaining agreement does not have to be consistent with the I.C.C. order. Appellant also argues that the ruling by the District Court has the effect of "second-guessing" the duly constituted bargaining representative of the appellees. Finally, appellant again urges that the *Arnold* case as affirmed by this Court requires us to hold that the subsequent agreement superseded the I.C.C. order insofar as it related to the same subject matter.

The effect of the *Arnold* case on the collective bargaining agreement here (Implementing Agreement 1-A), must be viewed within the context of the second sentence of Sec. 5(2) (f). That sentence provides:

> In its order of approval the Commission *shall* include terms and conditions providing that during the period of four years from the effective date of such order such transaction will not result in employees of the carrier or carriers by railroad affected by such order *being placed in a worse position* with respect to their employment * * *. 49 U.S.C. Sec. 5(2) (f). (Emphasis added.)

Cases construing the Act have held that this language means that employees shall not be placed in a worse position

with respect to compensation and that no "job freeze" is required. Brotherhood of Maintenance of Way Employees v. United States, *supra*, 366 U.S. at 176–177, 81 S.Ct. 913, 6 L.Ed.2d 206. In *Arnold*, the Court did *not* hold that the collective bargaining agreement placed the employees in a worse position, but rather that the agreement in question *supplemented* the I.C.C. order. Here the subsequent agreement abridged rights previously vested in the appellees by virtue of the I.C.C. order. The agreement in *Arnold* did not take away rights already granted, but merely added a new term to the I.C.C. order. The agreement now before us, in contrast, goes to the very heart of the protections to be afforded the appellees under the order. Furthermore, we find Implementing Agreement 1-A to be contrary to the policy of the Act, as embodied in the second sentence of Sec. 5(2) (f), which expressly makes provision to protect employees affected by a merger. The appellees here would appear to be precisely those employees protected by the provisions of the Act. The merger split their seniority district and, as a result, they were unable to receive the working time previously obtainable before the merger—no matter which option they chose. As the 1967 agreement abrogated certain rights and protections previously guaranteed to the appellees, we are in agreement with the District Court that the agreement is unenforceable. An agreement made pursuant to the last sentence of Sec. 5(2) (f) may vary the protections afforded by the I.C.C. order, but it may not substantially abrogate employees' rights grounded in an I.C.C. order. Nor may it frustrate the policy of the Act, as Implementing Agreement 1-A clearly did in the present case.

██ ██ In the alternative, appellant attacks the jurisdiction of the District Court on the basis of an alleged failure of the appellees to exhaust their administrative remedies. Appellant urges that the appellees are required to exhaust such remedies because of the arbitration clause contained in the 1962 agreement which, as we have seen, used the language "may be referred." This contention also looks to the *Arnold* case, as affirmed by this Court in the *Batts* case, for authority. If its contention that arbitration is required under the I.C.C. order is sustained, the appellant then contends that the appellees' application to the union to arbitrate, followed by the latter's refusal to do so, did not constitute the required exhaustion before invoking judicial intervention, citing Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).

The District Court on alternative grounds ruled in favor of the appellees on the exhaustion issue. First, the District Court noted that the appellees had reached a "dead-end street" in their attempt to utilize union remedies and that the doctrine of exhaustion presupposes an adequate remedy, citing Marsh v. County School Board, 305 F.2d 94 (4th Cir. 1962). The District Court also concluded that the arbitration provision in the I.C.C. order was "permissive," and, since neither the union nor the appellant had invoked arbitration it was not required and the District Court had jurisdiction of their claim.

A number of authorities have been examined to determine the effect of the words "may be referred" in an arbitration clause, including, in addition to the opinions in *Arnold* and *Batts, supra*, Brotherhood of Railroad Trainmen v. Chicago River & Indiana R. R. Co., 353 U.S. 30, 77 S.Ct. 635, 1 L.Ed.2d 622 (1957); New Orleans & Northeastern R. R. Co. v. Bozeman, 312 F.2d 264 (5th Cir. 1963); Parsons v. Norfolk & Western Ry. Co., 310 F.Supp. 1197 (S.D.W.Va. 1970); Bonnot v. Congress of Independent Unions, Local #14, 331 F.2d 355 (8th Cir. 1964); Brotherhood of Locomotive Engineers v. Chicago & Northwestern Ry. Co., *supra*. All of these cases may be cited as support for the proposition that the use of the word "may" does not necessarily mean that the arbitration clause is permissive. Perhaps the strongest statement in this regard is to be found in the *Bonnot* case,

wherein the Court of Appeals for the Eighth Circuit held:

> The obvious purpose of the 'may' language is to give an aggrieved party the choice between arbitration or the abandonment of its claim. Bonnot v. Cong. of Independent Unions, *supra*, 331 F. 2d at 359.

In *Batts* this Court held that the "may" arbitration clause was mandatory and not permissive, citing the *Bozeman* case, wherein the Court of Appeals for the Fifth Circuit interpreted and relied upon the *Chicago River & Indiana* case.

The crucial language of the *Bozeman* opinion is:

> We conclude that Section 8 of the [Oklahoma] Conditions gave either party the absolute right to select arbitration as a means for settling the dispute and when such selection was made then arbitration was mandatory on the other party. New Orleans & Northeastern R. R. Co. v. Bozeman, *supra*, 312 F.2d at 267.

The Court of Appeals went on to say, "We think this is the teaching of the Supreme Court's opinion in Brotherhood clear that the proposition upheld in each & Indiana R. R. Co." It is manifestly of the above cases is that the election by one of the parties to an agreement to arbitrate makes the clause compulsory, not that the clause is in all events mandatory. It is significant that in *Arnold-Batts*, in *Bozeman*, and in *Chicago River & Indiana R. R.*, involving the "may" language, one party had elected to submit the dispute in question to arbitration, and that each court then concluded that the arbitration clause because of such election became mandatory as to the other party.

In *Bonnot*, the Court of Appeals made of Railroad Trainmen v. Chicago River the statement, quoted *supra*, which in effect characterized the "may" clause as absolutely mandatory, relying upon United Steelworkers of America v. American Manufacturing Company, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960) and Deaton Truck Line, Inc. v. Local Union #612, 314 F.2d 418 (5th Cir. 1962). The *Deaton Truck Line* case interpreted the *American Manufacturing Company* case, and citing that case, the Court of Appeals stated:

> Clearly, however, "may" should be construed to give either aggrieved party the option to require arbitration. Deaton Truck Line, Inc. v. Local Union #612, *supra*, at 422.

Thus the cases cited by *Bonnot* do not compel the conclusion reached by the Eighth Circuit that the "may" clause is absolutely mandatory, in the sense of requiring either arbitration or abandonment of the aggrieved party's claim.

We are persuaded that the arbitration clause now before us was permissive until such time as the union or the appellant invoked arbitration. If either had done so, arbitration would have been required. As neither the union nor the appellant invoked arbitration, the clause remained permissive and the appellees may not be said to have failed to have exhausted their administrative remedy by virtue of the fact that their grievances were not submitted to arbitration.

We further are of the view that the appellees in this case have fulfilled any possible requirement for exhaustion of administrative remedies in that they sought to have arbitration invoked and were refused that remedy by their union. In pressing their grievances, the appellees had gone as far as they could have gone within the grievance settlement machinery.

The appellant cites the case of Republic Steel Corporation v. Maddox, 379 U. S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965), as authority for the proposition that the appellees had not gone far enough to excuse the exhaustion requirement. *Maddox* holds that the employees "must attempt use of the contract grievance procedure agreed upon by employer and union as the mode of redress." In *Maddox*, the Supreme Court reasoned that the union should be given the "opportunity to act" in order that the policy of preserving union influence may be ef-

fectuated. The record here supports the finding that the appellees did "attempt" such use of the contract grievance procedure within the meaning of *Maddox,* but that they were frustrated in this attempt when the union refused to request arbitration. Thus to hold on such facts that administrative remedies have been exhausted would in no way undermine union influence which was of primary concern to the Supreme Court in the *Maddox* ruling.

Appellant calls our attention to the case of Vaca v. Sipes, *supra,* an employee action against the union for breach of its duty of fair representation, wherein the Supreme Court indicated that exhaustion was not excused unless the employee proved that the union had breached its statutory duty of fair representation. To constitute such a breach, the union must have acted in an arbitrary, discriminatory, or bad faith manner. However, the Supreme Court also indicated in Vaca v. Sipes that an exception to the exhaustion requirement may exist where the effort to proceed with further administrative remedies would be futile. In the later case of Glover v. St. Louis-San Francisco Ry. Co., 393 U.S. 324, 330, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969), the Supreme Court affirmatively recognized the validity of this exception. That it would have been a futile gesture for the appellees to have attempted to proceed further with the arbitration procedure is readily apparent from the record before us.

Having concluded that the rights of the parties should be declared in accordance with this opinion, we come to the question of damages.

█ █ In accordance with the terms of the I.C.C. order, appellees are entitled to damages pursuant to 49 U.S.C. Secs. 8 and 9 to the extent that their compensation has been diminished by their inability to perform work throughout the Toledo Division. To the extent that their compensation may have been diminished by furloughs due to seasonal requirements, or by any decline in traffic or

revenues, they are not entitled to damages. In these conclusions we are in agreement with the District Court. We do not agree, however, as the District Court held, that the question of damages should be determined by arbitration. Rather, it appears to us that since the District Court has jurisdiction of the appellees' claims, it must adjudicate those claims in their entirety—the basic dispute between the parties as well as the relief to be afforded to each appellee.

Accordingly, the judgment of the District Court will be modified in accordance with this opinion and the action will be remanded to the District Court for further proceedings.

Modified and remanded for further proceedings.