Murray R. SORENSEN, Davey J. Horn, Ed P. Murphy, Tom E. Taylor, Lee L. Moreland, Robert E. Poole, Emil Kudera, Fred V. Skinner, Ed K. Madsen, Frank G. Jerkovich and Kenny L. Way, Sr., Plaintiffs,

v.

CHICAGO AND NORTH WESTERN TRANSPORTATION COMPANY, a corporation, Defendant.

Civ. No. 77–0–424.

United States District Court,
D. Nebraska.

June 8, 1979.

Jeffrey Stoehr and Mark Belmont, Omaha, Neb., for plaintiffs.

Harry B. Otis, Omaha, Neb., for defendant.

## MEMORANDUM

DENNEY, District Judge.

This matter comes before the Court upon the defendant's motion for summary judgment [Filing # 18]. Briefs and affidavits have been submitted and a hearing was held before the Court on February 9, 1979.

## BACKGROUND

In effect, this motion is quite similar to an earlier motion to dismiss [Filing # 11] filed by the defendant. The latter motion was denied at that time, the Court being of the opinion that it would be premature to dismiss the case at such an early stage of the litigation [See Filing # 15]. Since then, however, the parties have submitted an enormous amount of information, further clarifying their respective positions in this matter and culminating in defendant's summary judgment motion.

The Court has thoroughly reviewed the extensive record in this case, which indi-

cates the following: On May 23, 1968, the Interstate Commerce Commission [hereinafter referred to as the ICC] entered an order approving the merger of the Chicago Great Western Railway Company into the Chicago and North Western Railway Company (Finance Docket No. 23388). In this order, the ICC affirmed its prior order of September 27, 1967, providing for the protection of the employees pursuant to section 5(2)(f) of the Interstate Commerce Act (49 U.S.C. § 1 *et seq.*), by requiring that the employees be protected by the imposition of conditions as set forth in the *New Orleans Union Passenger Terminal Case*, 282 I.C.C. 271 (1952). Section 5(2)(f) provides as follows:

> As a condition of its approval, under this paragraph or paragraph (3), of any transaction involving a carrier or carriers by railroad subject to the provisions of this chapter, the Commission shall require a fair and equitable arrangement to protect the interests of the railroad employees affected. In its order of approval the Commission shall include terms and conditions providing that during the period of four years from the effective date of such order such transaction will not result in employees of the carrier or carriers by railroad affected by such order being in a worse position with respect to their employment, except that the protection afforded to any employee pursuant to this sentence shall not be required to continue for a longer period, following the effective date of such order, than the period during which such employee was in the employ of such carrier or carriers prior to the effective date of such order. Such arrangement shall contain provisions no less protective of the interests of employees than those heretofore imposed pursuant to this subdivision and those established pursuant to section 565 of Title 45. Notwithstanding any other provisions of this chapter and chapters 8 and 12 of this title, an agreement pertaining to the protection of the interests of said employees may hereafter be entered into by any carrier or carriers by railroad and the duly authorized representative or representatives of its or their employees.

49 U.S.C. § 5(2)(f) (Supp.1978).

Thereafter, on December 19, 1968, the merged railroad entered into Agreements for the Protection of Employees represented by the Brotherhood of Railroad Trainmen and the Order of Railway Conductors and Brakemen [hereinafter referred to as the 1968 Agreements]. [*See* Exhibit A attached to plaintiffs' amended complaint]. Both agreements which were substantially identical were entered into pursuant to § 5(2)(f). On January 1, 1969, the unions were merged into the United Transportation Union.

Prior to the 1968 Agreements, the plaintiffs were employed as yardmen. However, after the 1968 Agreements, the plaintiff obtained seniority rights as roadmen or trainmen.[1] As a result of this change, questions arose whether the plaintiffs, as former yardmen, were now subject to those provisions normally applicable to roadmen or trainmen. This was especially true with respect to the applicability of Rule 52 of the collective bargaining schedule agreement, effective October 1, 1946, between the Brotherhood of Railroad Trainmen and the former Chicago, St. Paul, Minneapolis, Omaha Railway Company, which required the plaintiffs to take an examination for promotion or risk discharge from employment. Rule 52 states as follows:

> In examining men on books of rules for promotion to conductors, oldest trainmen in service will have preference, merit and competency being equal. The Company reserves the right, however, to hire conductors outside of employes, should the service in the judgment of the officers demand it. Trainmen entitled to promotion will be promoted if considered com-

---

1. Yardman is a term generally connoting a craft associated with that activity carried on by an individual within the boundaries of the yard proper where he is employed. It is a classification of employment separate and distinct from the classification of one known as a roadman or trainman. This latter classification identifies that individual who works with and travels with the train when it leaves the yard and goes out on the road.

petent after examination by Division Superintendent or his representative. If applicant fails to pass such examination he may be re-examined after the expiration of three months if the Company is in need of men. If he fails to pass second examination, he will be neither re-examined nor promoted, the Company reserving the right to dismiss him from the service. The Superintendent shall be the judge of his qualifications.

Thereafter, on June 25, 1969, the United Transportation Union and the defendant entered into a Memorandum of Agreement establishing a Special Board of Adjustment to hear disputes with respect to the provisions of the 1968 Agreements. On April 19, 1976, The Special Board of Adjustment created under the June 25, 1969, agreement, rendered Award No. 142, regarding the dispute as to the application and interpretation of the 1968 Agreements. The Board found that the defendant did not violate the merger agreement. However, the Board did not consider the dispute regarding the interpretation of Rule 52. Neither the plaintiffs nor the union ever appealed or filed a petition for review of the April 19, 1976, decision [Award No. 142].

Then, on May 7, 1976, the union preferred to the defendant an agreement establishing a Special Board of Adjustment (Public Law Board No. 1811) under the Railway Labor Act (45 U.S.C. § 151 et seq.), to have jurisdiction over the question of whether the plaintiffs were given proper notice of examination for promotion to conductor under Rule 52 and whether they were improperly denied their monthly earning allowances guaranteed them by the 1968 Agreements. On June 30, 1976, Murray Humphrey, Director of Labor Relations for the defendant, wrote a letter to T. Q. Ryan, Chairman of the United Transportation Union, agreeing to the creation of a Special Board of Adjustment to handle only the dispute as to whether proper notice was given under Rule 52. Subsequently, on January 20,

1977, Public Law Board No. 1811 rendered Award No. 1, with respect to the dispute between the parties relating to whether Rule 52 was properly applied by the defendant to the plaintiffs.[2]

In the first cause of action of their amended complaint, the plaintiffs allege that the defendant breached the December 19, 1968, agreement in various particulars. This includes the failure to pay the plaintiffs guaranteed monthly earning allowances prescribed by the terms of the agreements. Plaintiffs claim this to be in violation of the protections afforded by 49 U.S.C. § 5(2)(f).

In their second cause of action, plaintiffs contend that Public Law Board No. 1811 in matters leading to its opinion of January 20, 1977, exceeded the scope of its authority and did not properly address itself to the issues; that the ruling was arbitrary and capricious and not based on sufficient factual and legal foundation.

## DISCUSSION

The plaintiffs, in their amended complaint, state that this Court has subject matter jurisdiction over the controversy pursuant to the following sections of the United States Code, to wit: 28 U.S.C. § 1331; 28 U.S.C. § 1337; 49 U.S.C. § 5(2)(f); 49 U.S.C. § 9; 49 U.S.C. § 16(12) and 45 U.S.C. § 153 subd. 1(q). Briefly stated, the first five statutes confer jurisdiction on this Court where the controversy arises under:

(1) The constitution, laws or treaties of the United States, 28 U.S.C. § 1331:

(2) Any Act of Congress regulating Commerce, 28 U.S.C. § 1337;

(3) An order of the ICC, 49 U.S.C. § 5(2)(f);

(4) The Interstate Commerce Act, 49 U.S.C. § 9;

(5) An order of the ICC, 49 U.S.C. § 16(12).

---

2. It should be noted at this point that at no time do the plaintiffs allege that the union breached its duty of fair representation in entering into any of the agreements involved in this action or in arbitrating the matter before the Special Boards.

The last statute, 45 U.S.C. § 153, provides for limited review by the United States District Court of a ruling by an adjustment board created under § 153.

The Court, having thoroughly reviewed the extensive record now before it, is of the opinion that the defendant's motion should be granted. The matters about which the plaintiffs complain do not spring directly from the merger order or any order of the ICC, but rather from the collective bargaining agreements of December 19, 1968, placing the matter within the exclusive jurisdiction of the National Railroad Adjustment Board or a Board established by agreement between the parties. *See* 45 U.S.C. § 153.

The Court will first consider plaintiffs' claims with respect to the defendant's alleged violation of the 1968 Agreements, and the effect which Award No. 142, rendered by the Special Board of Adjustment had on such claims. Later in the opinion, the Court will examine plaintiffs' claims with respect to the award rendered by Public Law Board No. 1811.

*The 1968 Agreements*

The ICC, in its order of May 23, 1968, approving the merger, affirmed its prior order of September 27, 1967, which provided for the protection of employees pursuant to § 5(2)(f), as follows:

> *It further appearing,* That as requested by the Railway Labor Executives' Association, in its petition, and agreed to by applicants, the interest of employees will be protected by the imposition of conditions as set forth in *New Orleans Union Passenger Terminal Case, supra,*[3] subject to the one following modification: The arbitration of disputes is to be governed by the following paragraph:
>
> *It is ordered,* That the Report and order of April 20, 1967, be, and it is hereby, modified to make the authorizations

granted subject to the aforesaid employee-protective conditions in lieu of those prescribed in the said report and order of April 20, 1967, and the petitions in all other respects be, and they are hereby, denied.

Following the merger, the defendant and the authorized union representatives of the plaintiffs entered into the 1968 Agreements in lieu of the ICC order. This undertaking was proper in light of the last sentence of § 5(2)(f) which reads as follows:

> Notwithstanding any other provisions of this chapter and chapters 8 and 12 of this title, an agreement pertaining to the protection of the interests of said employees may hereafter be entered into by any carrier or carriers by railroad and the duly authorized representative or representatives of its or their employees.

Article 14 of the 1968 Agreements provides for the arbitration of disputes. It stipulates that any controversy between the parties with respect to the provisions of the agreement which cannot be settled within a certain period may be referred by either party to a Disputes Committee for consideration and determination. However, the union and the defendant went further and, pursuant to their agreement of June 25, 1969, set up a Special Board of Adjustment [*See* Exhibit 4 attached to the affidavits of Murray Humphrey and John D. Crawford], to hear and decide any dispute with respect to the provisions of the protection agreements which could not be settled by the parties. This Board rendered Award No. 142, which found that "[u]nder the terms of the Merger Agreement, all of these claimants did acquire road seniority rights as of December 19, 1968, and they thereby became subject to the terms of Rule 52, which the parties *agree* makes the taking of examinations for promotion to conductor mandatory . . . ."[4] (Emphasis added)

---

3. The *New Orleans Union Passenger Case, supra,* combined the conditions of the Washington Agreement of May 21, 1936, and the ICC order of May 17, 1944, in *Oklahoma Ry. Trustee Abandonment,* 258 ICC 177 (1944), the latter case providing for the resolution of employee protection disputes by arbitration. Accordingly, the December 19, 1968, agreement pro-

vided its own arbitration mechanism to handle employee protection disputes.

4. The Special Board noted that the parties, by virtue of their Letters of Understanding of January 20, 1972, agreed that by acquiring road seniority rights pursuant to the 1968 Agreements, the yardmen became subject to Rule 52.

[*See* Exhibit # 5 attached to the affidavits of Murray Humphrey and John D. Crawford]. Therefore, by providing for arbitration in the agreements, the parties made such arbitration mandatory and any award issued by the arbitration committee, which in this case was the Special Board, was binding on the employees. Consequently, as a result of the 1968 Agreements which displaced the ICC merger order, the plaintiffs cannot sue the defendant directly for the benefits allegedly due them.

In *Arnold v. Louisville and Nashville R. R. Co.*, 180 F.Supp. 429 (M.D.Tenn.1960), aff'd sub nom. *Batts v. Louisville and Nashville R. R. Co.*, 316 F.2d 22 (6th Cir. 1963), the District Court was faced with a similar situation. There, the Nashville, Chattanooga & St. Louis Railway by which the plaintiffs were employed was merged with the Louisville and Nashville Railroad Company pursuant to an ICC order effective August 14, 1957. As a result, the plaintiffs became employees of the defendant. As in this case, the ICC merger order provided for the protection of the employees under the same conditions as were imposed in the *New Orleans Union Passenger Terminal* case. This was set out in the ICC's report of March 1, 1957, which further provided that disputes as to employees affected by the actions of the railroads consummating the merger might be resolved by following the procedure set forth in Condition No. 8 of the conditions prescribed in the *Oklahoma* case which, as the Court noted earlier, formed a part of the protective conditions of the ICC order allowing the merger in the instant case. Condition No. 8 provided for the arbitration of disputes which could not be settled in thirty days. Subsequently, on January 10, 1958, the defendant and the duly authorized representatives of its employees entered into a Memorandum of Agreement, effective January 16, 1958, which provided additional benefits for employees and for arbitration of disputes which could not be resolved within thirty days. The plaintiffs filed suit in federal court, resting their claims solely upon the order of the ICC approving the merger and the conditions imposed therein for their protection, rather than on the rights conferred upon them under the Memorandum of Agreement of January 16, 1958. This raised the question whether the plaintiffs' rights and their causes of action derived from the ICC order or the Memorandum of Agreement. Addressing this question, the court wrote:

Plaintiffs' argument, as the Court understands it, is that their rights are not affected by the Memorandum of Agreement, as their collective bargaining representatives were without authority to bargain away rights which they derived under the order of the Commission. This argument, however, ignores the specific provision of the statute wherein it is stated:

"Notwithstanding any other provisions of this chapter * * *, an agreement pertaining to the protection of the interest of said employees may hereafter be entered into by any carrier or carriers by railroad and the duly authorized representative or representatives of its or their employees."

Thus, while the statute required the Commission to make provisions for the protection of employees adversely affected, it specifically reserves to the railroad employees the right, through their duly authorized representatives, to enter into an agreement with the railroad as to terms, conditions and arrangements for their own protection. Under this provision of the statute, as the Court construes its meaning and effect, the employees may, through a collective bargaining agreement with the railroad, make provisions for their own protection by adopting, supplementing or implementing the provisions made by the Commission for their protection. It would appear logically to follow that such an agreement *takes the place of the order of the Commission insofar as the agreement and the order relate to the same subject matter.* The Court, therefore, holds that any rights of plaintiffs to receive the lump sum pay-

ments they are seeking to recover derive from the Memorandum of Agreement effective January 16, 1958, and that such agreement is the foundation of their rights in this respect. (Emphasis added). *Arnold v. Louisville and Nashville R. R. Co., supra,* 180 F.Supp. at 433–34.

On appeal, the Sixth Circuit Court of Appeals affirmed the lower court decision and wrote as follows:

Appellant employees contend that it would be unfair to them, and an impairment of their rights to be required to submit their claims for protective benefits to an arbitration committee concerning which they were denied any right of choice in its formation. In the railway labor field, Congress, in the Railway Labor Act, 45 U.S.C.A. § 151 et seq., has specifically provided for arbitration of employees' claims before an arbitration board selected by the carrier and the duly authorized representative of the employees. There appears to us nothing unfair or inequitable about requiring a railway employee to submit his individual claim to an arbitration board, the formation of which is agreed upon by the duly certified bargaining agent of the employees and the carrier. Such is the usual and accepted method of selecting an arbitration board in controversies between railroads and their employees, as seen in the enactment by Congress of the Railway Labor Act; and it is with this background that the intent of Congress, in enacting Section 5(2)(f) of the Interstate Commerce Act, here in question, must be determined.

We are of the view that the right of appellant employees is not impaired by the requirement of submission of their claims to an arbitration committee, the formation of which is agreed upon by the duly authorized representative of the employees and by the carrier.

*Batts v. Louisville and Nashville R. R. Co., supra,* 316 F.2d at 27.

The plaintiffs place much emphasis on the decision in *Nemitz v. Norfolk & Western Ry. Co.,* 436 F.2d 841 (6th Cir.), *aff'd.* 404 U.S. 37, 92 S.Ct. 185, 30 L.Ed.2d 198 (1971). However, the Court is of the opinion that *Nemitz* is inapposite.

In *Nemitz,* the carrier and the union entered into a 1962 agreement which *predated* the ICC merger order. The subsequent ICC merger order adopted the parties' prior agreement as part of its order providing for employee protective provisions. Later, the parties entered into an agreement postdating the merger order which restricted the rights which the earlier 1962 agreement conferred upon the employees. The court found that the provisions of the earlier 1962 agreement were incorporated into the ICC merger order, in order to fulfill the requirements of 49 U.S.C. § 5(2)(f). Thus, the later agreement was in violation of the ICC order and the court had jurisdiction to enforce the rights of the employees under the 1962 agreement.[5]

However, in this case, as the Court has already noted, the 1968 Agreements postdated the ICC order. Thus, this case does not involve claims arising from the alleged violation of an ICC merger order which incorporated an *earlier* protective agreement. It involves a suit based on alleged violations of the protective benefits or rights flowing from the 1968 Agreements which were entered into pursuant to the last sentence of § 5(2)(f) and, like the *Arnold* case, displaced rights contained in the ICC merger order. Hence, it is clear that the plaintiffs cannot bring suit in this Court but are required to comply with the terms of the 1968 Agreements with respect to their claims.

■ The Court notes that in *Nemitz,* the Sixth Circuit and the Supreme Court on appeal held that an agreement entered into pursuant to the last sentence of § 5(2)(f) may not "substantially abrogate" the rights contained in the ICC order. *Norfolk &*

---

5. The Court also notes that in *Nemitz,* unlike in this case, the union refused to arbitrate in accordance with the ICC merger order.

*Western R. R. Co. v. Nemitz, supra,* 404 U.S. at 44, 92 S.Ct. 185, *quoting, Nemitz v. Norfolk & Western R. R. Co., supra,* 436 F.2d at 848. While this is clearly the law, the statement must be considered in terms of this case. The rights asserted by the plaintiffs stem from the 1968 Agreements, not the ICC merger order. It is the violation of those rights in the 1968 Agreements which the plaintiffs are attempting to vindicate in this Court. Nowhere in their complaint do the plaintiffs contend that the 1968 Agreements violate or "substantially abrogate" the ICC merger order. As the Second Circuit Court of Appeals stated in *O'Mara v. Erie Lackawanna R. R. Co.,* 407 F.2d 674 (4th Cir. 1969), *aff'd sub nom. Czosek v. O'Mara,* 397 U.S. 25, 90 S.Ct. 770, 25 L.Ed.2d 21 (1970):

> On appeal we are informed that the section of the Act relied upon is 49 U.S.C. § 5(2)(f), which provides certain safeguards for employees affected by a railroad merger. The Supreme Court has ruled that this section does not prevent the discharge of employees as the result of a merger, but rather relates only to questions of compensation. *Brotherhood of Maintenance of Way Employees v. United States,* 366 U.S. 169, 81 S.Ct. 913, 6 L.Ed.2d 206 (1961). The complaint provides us with no indication that plaintiffs are attacking any action taken by the Interstate Commerce Commission under § 5(2)(f), nor does it allege in what respect the section has been violated. The section does authorize a railroad and union to enter into an agreement protecting the interests of workers affected by a merger. To the extent that plaintiffs have been wronged it appears to have been through a misapplication of the Implementing Agreement. Thus once again we have the type of employee-employer contract dispute which under federal law must be submitted first to the Railroad Adjustment Board and not to the courts. Cf. *Arnold v. Louisville & Nashville R. R. Co.,* 180 F.Supp. 429 (M.D.Tenn.1960), aff'd sub nom. *Batts v. Louisville & Nashville R. R. Co.,* 316 F.2d 22 (6th Cir. 1963). Dismissal of this portion of the complaint was proper, in addition, because it did not give defendants "fair notice" of the basis of plaintiffs' claim under the Act. *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

*O'Mara v. Erie Lackawanna R. R. Co., supra,* 407 F.2d at 677–78.

While it is clear from the above discussion that this Court does not have jurisdiction over the subject matter of this action since the controversy arises from alleged violations of the 1968 Agreements, of the six statutes cited earlier in this opinion, a consideration of 45 U.S.C. § 153 First (q) indicates that this Court may narrowly review the decisions of Special Boards of Adjustment such as the Board which rendered Award No. 142 in this case. *See Brotherhood of Ry., Airline and Steamship Clerks v. Kansas City Terminal Ry. Co.,* 587 F.2d 903, 905–06 (8th Cir. 1978); *Transportation-Communication Division v. St. Louis-San Francisco Ry. Co.,* 419 F.2d 933, 935 (8th Cir.), *cert. denied,* 400 U.S. 818, 91 S.Ct. 34, 27 L.Ed.2d 45 (1970).

■ Yet, the first cause of action of plaintiffs' amended complaint is based on an alleged breach by the defendant of the December 19, 1968, agreements, rather than on any failure of a special board of adjustment to comply with the standards set forth in 45 U.S.C. § 153 First (q). Thus, the first cause of action seeks to have this Court rule on the alleged contractual violations or the merits of this issue rather than review a Board's award concerning such issue. It is clear, however, that § 153 First (q) does not give this Court original jurisdiction of contractual disputes involving railway collective bargaining agreements. *Goclowski v. Penn Cent. Transp. Co.,* 571 F.2d 747, 755–56 (3d Cir. 1977); *Young v. Southern Pac. Transp. Co.,* 420 F.Supp. 386, 389 (N.D.Cal. 1976).

■ Furthermore, the plaintiffs have never filed a petition for review of Award No. 142 of the Special Board of Adjustment pursuant to § 153 First (q) or § 153 Second of the Railway Labor Act. Award No. 142

was rendered on April 19, 1976. Any review by this Court is barred after two years. 45 U.S.C. § 153 First (r) (Supp.1971).

In light of the above discussion, it is also clear that even if plaintiffs' rights should be regarded as being derived from the ICC merger order, the Court's opinion in this matter would not change.

■ As the Court mentioned earlier, the ICC merger order included the conditions of the *Oklahoma Abandonment* case. Condition 8 of that case provides for arbitration of merger disputes. Provisions made by the ICC for arbitration are mandatory, not permissive, especially where, as here, either party elects to utilize the arbitration procedure. *See New Orleans & Northeastern R. R. Co. v. Bozeman*, 312 F.2d 264, 267–68 (5th Cir. 1968); *see also Arnold v. Louisville and Nashville R. R. Co., supra*, 180 F.Supp. at 435. Therefore, in accordance with the ICC merger order, the parties provided for final and binding arbitration in the 1968 Agreements.

Thereafter, pursuant to the agreement of June 25, 1969, the Special Board was created and Award No. 142 rendered. This award was final and binding on the parties. Neither the union nor the plaintiff perfected an appeal.

■ Now, the plaintiffs, who make no complaint regarding Award No. 142, come to this Court and ask that it adjudicate the merits of its claims regarding the 1968 Agreements. This Court will not reconsider the merits of this action where there is a final and binding determination made by the Board in accordance with the ICC merger order as well as the 1968 Agreements. *See Gunther v. San Diego & Arizona Eastern Ry. Co.*, 382 U.S. 257, 261–62, 86 S.Ct. 368, 15 L.Ed.2d 308 (1965); *Monaghan v. Central Vermont Ry., Inc.*, 404 F.Supp. 683, 686 (D.Mass.1975); *see, e. g., Bower v. Eastern Airlines, Inc.*, 214 F.2d 623 (3rd Cir. 1954), *cert. denied*, 348 U.S. 871, 75 S.Ct. 107, 99 L.Ed. 685 (1954). To do so would undermine the ICC order itself and allow the plaintiffs to circumvent the arbitration procedure which was provided to handle these disputes. *See Arnold v. Louisville and Nashville R. R. Co., supra*, 180 F.Supp. at 435–36; *see also Parsons v. Norfolk & Western Ry. Co.*, 442 F.2d 1075 (4th Cir. 1971). Significantly, in *Nemitz*, as the Court noted earlier, the union refused to arbitrate and the employees therefore had to file suit in federal court to obtain relief. Here, the parties fully utilized the arbitration procedure which resulted in a final and binding award.

### *Public Law Board No. 1811*

At the outset, the Court points out that the above discussion regarding the 1968 Agreements and the effect of Award No. 142 on this Court's jurisdiction is equally applicable to the following discussion of Public Law Board No. 1181 which was also established by agreement of the parties pursuant to the 1968 Agreements.

Plaintiffs' second cause of action requests a review of the award rendered by Public Law Board No. 1811. A review of that award indicates that the only issue decided by the Board was the issue raised regarding the interpretation and application of Rule 52 of the Schedule Agreement contained in the 1946 collective bargaining agreement. Public Law Board No. 1811 had no jurisdiction of and did not attempt to decide any dispute regarding the 1968 Agreements. Those disputes were settled by the Special Board of Adjustment in its final and binding decision rendered in Award No. 142. That award is not reviewable by this Court. Thus, any review of the award of Public Board No. 1181 is limited to a consideration of that Board's decision with respect to the interpretation and application of Rule 52.

A review of the decision of Public Law Board No. 1811 indicates that it rests squarely on the agreement of January 20, 1972, in which the defendant and the duly authorized representative of the plaintiffs agreed that the procedure followed in the administration of the examinations for promotion to conductor complied with Rule 52, and that plaintiffs' failure to pass the examination subjected them to loss of their seniority rights and all other rights under the agreements between the parties.

 The agreement establishing the Public Law Board [*See* Exhibit # 7 attached to the affidavits of Murray Humphrey and John D. Crawford] authorized the Board, in accordance with § 153 Second of the Railway Labor Act, to decide a dispute between the parties involving the interpretation and application of the collective bargaining agreements. The award of the Board is confined to the interpretation and application of these agreements.

Accordingly, the Court finds that the award of Public No. 1181 did not exceed the scope of the Board's authority; it is not arbitrary, capricious or contrary to the law. The award has ample factual and legal foundation and properly addresses itself to the issues which were placed before the Board.

While the plaintiffs may disagree with the Board's interpretation of the applicable agreements, this does not give the Court jurisdiction to review the award. As the Seventh Circuit Court of Appeals in *Kotakis v. Elgin, Joliet and Eastern Ry. Co.*, 520 F.2d 570 (7th Cir.), *cert. denied*, 423 U.S. 1016, 96 S.Ct. 451, 46 L.Ed.2d 389 (1975), stated:

> On analysis, plaintiff is essentially asserting that the Third Division disregarded evidence submitted to it or misinterpreted the provisions of the labor contract. However, in *Gunther v. San Diego & Arizona Eastern Ry. Co.*, *supra* [382 U.S. 25] at 263, 86 S.Ct. 368, [15 L.Ed.2d 308] the Supreme Court held that the courts may not open up the Board's finding on the merits because Congress intended minor grievances of railroad workers to be decided finally by the Railroad Adjustment Board. Likewise, this Court has already determined that a litigant cannot complain merely that an Adjustment Board award was based on insufficient evidence. *Edwards v. St. Louis-San Francisco Railway Co.*, *supra* at 952. *Gunther* and *Edwards* also make it clear that the interpretation of railroad collective bargaining agreements is for the Adjustment Board rather than the courts. 382 U.S. at 261–262, 86 S.Ct. 368

and 361 F.2d at 952. In view of these interpretations of the courts' power of review under Section 3 First (q), we cannot sustain plaintiff's attack on the merits of the award.

*Kotakis v. Elgin, Joliet & Eastern Ry. Co.*, *supra*, 520 F.2d at 575; *see also Diamond v. Terminal Ky. Ala. State Docks*, 421 F.2d 228, 232–33 (5th Cir. 1970).

An order shall issue contemporaneously with this Memorandum Opinion.